Camille RUGGIERO

v.

CITY OF PROVIDENCE et al.

No. 2004–376–Appeal.

Supreme Court of Rhode Island.

March 3, 2006.

Lauren E. Jones, Esq., Providence, for Plaintiff.

Caroline C. Cornwell, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The plaintiff, Camille Ruggiero, appeals from a judgment of the Superior Court

denying her motion for summary judgment and granting the cross-motion for summary judgment of the defendant, City of Providence. The material facts in this case are not in dispute and we are called upon to interpret § 17–191 of Providence's Code of Ordinances as it relates to this former city employee's right to collect the full extent of her disability retirement pension.

## Facts and Procedural History

On August 4, 1997, while she was an employee of the City of Providence, Ms. Ruggiero sustained an injury that rendered her permanently disabled and unable to return to work. Because her injury arose from, and in the course of, her employment, Ruggiero received workers' compensation benefits from the city.[1] Ruggiero also applied for, and was granted, a disability retirement pension from the city in the amount of $1,530.68 per month, which commenced in November 2001.

In addition, Ruggiero settled with the third party tortfeasor responsible for the injuries she sustained. She received $300,000 from this settlement, and tendered $78,699.50 of it to the city to satisfy its lien against her for workers' compensation benefits paid to that point. See G.L. 1956 § 28–35–58(a).[2] Thereafter, the city ceased paying workers' compensation benefits to her, as it is statutorily authorized to do under § 28–35–58(a), which gives an insurer (or, in this case, the city) the right to suspend the payment of workers' compensation benefits when the injured employee recovers damages from a liable third party.[3]

In addition to suspending workers' compensation payments, the city also reduced Ruggiero's disability retirement pension. The city relied on § 17–191 of the City of Providence's Code of Ordinances, which provides in pertinent part:

---

1. See generally, G.L. 1956 chapters 29 through 38 of title 28, known as the "Workers' Compensation Act."

2. General Laws 1956 § 28–35–58(a) provides in pertinent part:
   "Where the injury for which compensation is payable under chapters 29—38 of this title was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect of the injury, the employee may take proceedings, both against that person to recover damages and against any person liable to pay compensation under those chapters for that compensation, and the employee shall be entitled to receive both damages and compensation. The employee, in recovering damages either by judgment or settlement from the person so liable to pay damages, shall reimburse the person by whom the compensation was paid to the extent of the compensation paid as of the date of the judgment or settlement and the receipt of those damages by the employee shall not bar future compensation."

3. The relevant portion of § 28–35–58(a) states:
   "An insurer shall be entitled to suspend the payment of compensation benefits payable to the employee when the damages recovered by judgment or settlement from the person so liable to pay damages exceeds the compensation paid as of the date of the judgment or settlement. The suspension paid shall be that number of weeks which are equal to the excess damages paid divided by the employee's weekly compensation rate; however, during the period of suspension the employee shall be entitled to receive the benefit of all medical and hospital payments on his or her behalf. If the employee has been paid compensation under those chapters, the person by whom the compensation was paid shall be entitled to indemnity from the person liable to pay damages, and to the extent of that indemnity shall be subrogated to the rights of the employee to recover those damages."

"Any amounts *paid* or *payable* under the provisions of any worker's [*sic*] compensation law, or as the result of any action for damages for personal injuries against the city, on account of death or disability of a member, shall be offset against and payable in lieu of any benefits payable out of funds provided by the city under the provisions of this article on account of the death or disability of the member." (Emphases added.)

The city asserted that it had the right to offset Ruggiero's disability retirement pension by the amount of the workers' compensation benefits to which she was entitled, although not currently receiving because of the suspension.

In response, Ruggiero initiated an action in the Workers' Compensation Court, asking the court to discontinue her statutory entitlement to workers' compensation benefits so that she could, instead, receive the full amount of her disability retirement pension. The Workers' Compensation Court denied this request, ruling that it was constrained from discontinuing benefits except as statutorily authorized, and that Ruggiero's circumstances did not satisfy the conditions set forth in the statute. We granted Ruggiero's petition for certiorari but upheld the judgment of the Workers' Compensation Court. *Ruggiero v. City of Providence,* 889 A.2d 691 (R.I.2005) (*Ruggiero I* ).

Ruggiero also began the instant action, in which she challenged the city's interpretation of § 17–191 of the Providence Code in a situation such as hers, in which workers' compensation benefits have been suspended. The hearing justice below ruled in favor of the city, holding that even though the benefits payable to Ruggiero were suspended pursuant to § 28–35–58, those benefits were nonetheless "payable." Accordingly, the hearing justice found that the city properly fulfilled its obligation under § 17–191 to offset the amount of money to which Ruggiero is entitled under her disability retirement pension.

On appeal, Ruggiero argues that the hearing justice erred when he determined that there are benefits "payable" to her under the Workers' Compensation Act. She maintains that the workers' compensation benefits to which she would have been entitled no longer are "payable" to her because the city suspended those benefits pursuant to § 28–35–58(a). On the other hand, the city argues that the hearing justice's interpretation of the word "payable" in § 17–191 was correct.

## Standard of Review

When reviewing the grant of a summary judgment motion, this Court employs the same standard on review as the hearing justice. *Sindelar v. Leguia,* 750 A.2d 967, 969 (R.I.2000). "We conduct such a *de novo* analysis 'to decide whether an issue of material fact exist[s] and whether the moving party [is] entitled to summary judgment as a matter of law.'" *Id.* at 969–70. (Emphasis added.) This Court also applies *de novo* review to questions of statutory interpretation. *State v. Menard,* 888 A.2d 57, 60 (R.I.2005).

## Analysis

What does the word "payable" mean as it appears in § 17–191 of the Providence Code? When interpreting an ordinance, we employ the same rules of construction that we apply when interpreting statutes. *Mongony v. Bevilacqua,* 432 A.2d 661, 663 (R.I.1981). If the statute is clear and unambiguous, we must enforce it as written by giving the words of the statute their plain and ordinary meaning. *Menard,* 888 A.2d at 60. In addition, "[t]his [C]ourt has long applied a canon of statutory interpretation which gives effect to all of a statute's provisions, with no

sentence, clause or word construed as unmeaning or surplusage." *Local 400, International Federation of Technical and Professional Engineers v. Rhode Island State Labor Relations Board,* 747 A.2d 1002, 1005 (R.I.2000) (quoting *Rhode Island Department of Mental Health, Retardation, and Hospitals v. R.B.,* 549 A.2d 1028, 1030 (R.I.1988)).

■ The drafters of § 17–191 chose to use both "paid" and "payable" in the retirement ordinance to delineate the circumstances in which the city can offset pension benefits: "Any amounts *paid* or *payable* under the provisions of any worker's [*sic* ] compensation law * * * shall be offset against and payable in lieu of any benefits payable out of funds provided by the city under the provisions of this article * * *." (Emphases added.) Because we must presume that the drafters intended every word of the ordinance to have a useful purpose and to have some force and effect, *Defenders of Animals v. Department of Environmental Management,* 553 A.2d 541 (R.I.1989), we believe that here, "payable" and "paid" have separate and distinct meanings.

The term "paid," the past tense of "pay," ordinarily refers to the satisfaction of a debt by transferring money. In the context of § 17–191, "paid" refers to money already received by a city employee from workers' compensation benefits or an action for damages against the city. When juxtaposed with the word "paid," "payable" extends the reach of the offset provision to those who have not yet received money from workers' compensation or an action against the city, but to whom such money is "payable." We are convinced that the word "payable" in this context refers to an obligation to pay that ·is not immediately due.

Although the city suspended payment of Ruggiero's workers' compensation bene-fits, these funds nevertheless are payable to her. According to § 28–35–58, the city may suspend payment of workers' compensation, but only for a definite amount of time calculated by dividing the excess third-party settlement by the weekly compensation rate. Therefore, the city is not off the hook; its obligation to resume payment will commence anew when the suspension period established by statute has ended.

Moreover, in *Ruggiero* I we affirmed the Workers' Compensation Court's decision that "the workers' compensation system 'is, in a sense, a contract between employees and employers, the execution of which is overseen by the Workers' Compensation Court.'" *Ruggiero,* 889 A.2d at 697–98. We further stated that "[a]s a party to such a 'contract,' Ms. Ruggiero is bound by the rules peculiar to the workers' compensation system[.]" *Id.* at 698. Similarly, the City of Providence, as a party to this "contract," continues to have an obligation to Ms. Ruggiero under the workers' compensation system, despite having currently suspended payment of benefits. It is our opinion, therefore, that § 17–191 applies to a situation, such as Ruggiero's, in which workers' compensation is payable, even though the city has suspended payment of such benefits pursuant to § 28–35–58.

### Conclusion

For the foregoing reasons, we deny Ruggiero's appeal and affirm the judgment of the Superior Court, to which we remand the record in this case.