Scott PIERCE

v.

**PROVIDENCE RETIREMENT BOARD.**

No. 2009–145–M.P.

Supreme Court of Rhode Island.

March 2, 2011.

Elizabeth A. Wiens, Esq., for Plaintiff.

Kenneth B. Chiavarini, Esq., for Defendant.

Present SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

Scott Pierce (Pierce or petitioner), filed a petition for the issuance of a writ of certiorari seeking our review of a Providence Retirement Board (board or respondent) decision that denied Pierce's application for accidental-disability retirement benefits. This Court granted the petition, and Pierce's case came before the Supreme Court for oral argument on November 9, 2010, pursuant to an order directing the parties to appear and show cause why the issues raised in this petition should not be decided summarily. After considering the parties' submitted memoranda and oral arguments, we are satisfied that cause has not been shown and proceed to decide the petition at this time. For the reasons set forth in this opinion, we quash the decision of the board.

## I

### Facts and Procedural History

During Pierce's more than twenty-six years of service as a firefighter for the City of Providence, he repeatedly injured his right ankle while at work. His most recent on-the-job injury occurred on or about June 29, 2006[1] when, wearing "full

---

1. This Court notes a discrepancy as to the exact date of the June 2006 injury. The rec-

[firefighting] gear," he "[b]anged [his] ankle while walking to [the] third floor" of the "Calart Flowers, [400] Reservoir Avenue," building. Immediately after this 2006 injury, Pierce's ankle was surgically fused, and he was unable to return to work. Accordingly, on August 16, 2006, Pierce applied to the board for "accidental disability retirement" based on § 17–189(5) (the ordinance) of the Providence Code of Ordinances (Providence Code).[2]

As required by the ordinance, Pierce was examined in 2006 by three physicians, James E. McLennan, M.D. (Dr. McLennan), Randall L. Updegrove, M.D. (Dr. Updegrove), and Thomas F. Morgan, M.D. (Dr. Morgan), each of whom concluded that, because of employment-related accidents, Pierce was permanently disabled from performing his full duties as a firefighter. In relaying their assessments to the board, each physician checked a box on the board-supplied "Accidental Disability Questionnaire" (questionnaire) indicating that Pierce's "incapacity [was] the natural and proximate result of an accident while in the performance of duty." The questionnaire then asked the physicians to certify "[t]he date of the accident" and "[t]he place of the accident." Doctor McLennan responded that there were "multiple" accidents, the first in 1994,[3] and that these occurred at "work." Doctor Updegrove stated that the first accident occurred in approximately 1994; the most recent accident occurred on June 29, 2006, and the place of the accident was "400 Reservoir Ave." Lastly, Dr. Morgan attested that there were "multiple falls," left the date of the accident blank, and in his narrative accompanying the questionnaire, stated that Pierce presented with "physical impairments" caused by "multiple injuries while on the job."

Thereafter, Guy Geffroy, M.D. (Dr. Geffroy), the board's medical advisor, wrote to the physicians asking each to clarify his medical opinion by articulating whether "Pierce's incapacity is solely the result of the accident [on] 6/29/06 or whether it is because of his having multiple traumas."[4]

ord includes documentation indicating that the injury occurred on June 28, 2006, and alternatively, on June 29, 2006. Because the exact date is irrelevant to our opinion, we will use the June 29, 2006, date to maintain consistency with the board's decision.

2. The Providence Code of Ordinances (Providence Code) consists of twenty-seven chapters pertaining to the governance of the City of Providence. Relevant here, Chapter 17, "Officers and Employees," is arranged into six articles, including Article VI, "Retirement System." It is within this chapter and article that the ordinance relevant to Pierce's petition ("Benefits payable," § 17–189) is located. Also pertinent to the instant matter is Providence Code Chapter 1, "General Provisions," which contains § 1–2, "Rules of construction." Section 1–2 is applicable globally to all of the Providence Code's ordinances, including § 17–189.

3. Though not particularly important to this appeal, this Court notes that there are incon-sistent dates for Pierce's initial right-ankle injury. Within the record, there is a May 1, 1989, "Report of Injury on Duty" noting that Pierce twisted his right ankle, which resulted in a "chipped or broken bone" and required an "ankle cast." However, the board's decision states that he broke his ankle in 1992, and two of the three independent medical evaluations indicate that the first ankle injury occurred approximately in 1994. To maintain consistency with the physicians' findings, this Court will consider 1994 as the date of the first injury.

4. Each letter from Dr. Geffroy to the physicians was worded slightly differently, but retained the same meaning. The letter to Dr. McLennan is quoted in the text of this opinion. The letter sent to Dr. Morgan asks for "clarif[ication] as to whether [Pierce's] disability is because of one accident, specifically the injury of June 29, 2006, or is a cumulative result." The letter to Dr. Updegrove asks him to "please indicate whether [Pierce's] incapacity is the result solely of the injury of June

Doctor McLennan attributed Pierce's disability to "degenerative arthritis based on the trauma to the ankle starting [in 1994]" that "would have progressed * * * regardless of his duties." The other two physicians, Dr. Updegrove and Dr. Morgan, respectively confirmed that Pierce's disability was "the result of the cumulative effect of multiple traumas" and that it was not possible "to identify a single isolated trauma that accounted for this disabling arthritis to [Pierce's] right ankle joint."

On May 23, 2007, the board voted to deny Pierce's application for accidental disability retirement and wrote to Pierce advising him of its decision. The board's letter did not substantiate its determination with findings of fact or conclusions of law. As such, Pierce retired with a service pension on June 28, 2007, but proceeded in this Court to challenge the board's denial of his application for accidental-disability retirement.

On September 12, 2007, this Court granted Pierce's petition for a writ of certiorari, which permitted a review of the board's decision of May 23, 2007. After briefing and oral argument, we vacated the board's denial and held that "[t]he absence of findings by the board makes it impossible for us to review the board's decision and determine whether it was supported by legally competent evidence or included any errors of law." *Pierce v. Providence Retirement Board*, 962 A.2d 1292, 1292–93 (R.I.2009) (mem.). This Court remanded "for a new hearing on Pierce's application for an accidental-disability pension" and

"direct[ed] the board to issue a written decision setting forth its findings and conclusions." *Id.* at 1293.

Thereafter, on January 28, 2009, and March 25, 2009, the board's medical disability subcommittee (subcommittee) revisited Pierce's application. During the first meeting, Dr. Geffroy summarized the subcommittee's issue with Pierce's case: "the only problem with granting accidental disability retirement * * * [is because the disability] was not the result of a single work related accident but [rather] a cumulative set of injuries." Another subcommittee member echoed this sentiment at the second meeting when he agreed that denying Pierce's application was appropriate because there was no "single accidental occurrence resulting in the disability." Accordingly, the subcommittee again recommended that the board deny Pierce's application.[5] Then, consequent to a majority vote, the board denied Pierce's application.[6] A written decision adopting the subcommittee's findings and recommendation was completed by the board on March 25, 2009. The board determined that "[t]he independent physician reports and other evidentiary material * * * do[ ] not indicate that a specific accident was the cause of Pierce's injury." "Rather, [it found that Pierce's] disability flows from numerous repeated injuries to his ankle, none of which could be said to be the natural or proximate cause of his incapacitating disability." Finding that Pierce could not establish that he was "incapacitated as a

---

29, 2006, or the cumulative effect of multiple traumas."

**5.** The record indicates that at least one member of the subcommittee voted to grant Pierce's application for accidental-disability retirement.

**6.** The board's vote was not unanimous. In fact, after the meeting on January 28, 2009,

the subcommittee made its "recommendation to the full board and there was a tie in the vote for the full board." The subcommittee reconvened on March 25, 2009, again made its denial recommendation to the full board, and then this vote of March 25, 2009 by the full board produced the majority necessary to deny Pierce's application.

proximate result of an accident as required by [the] ordinance," the board denied his application. It is from this decision of the board that we granted certiorari for a second time.

## II

### Standard of Review

■■■ This Court reviews decisions of the board by a writ of certiorari. *See, e.g.,* Supreme Court Rules of Appellate Procedure, Article I, Rule 13(a); *Sobanski v. Providence Employees' Retirement Board,* 981 A.2d 1021, 1021 (R.I.2009) (mem.); *Scolardi v. City of Providence,* 751 A.2d 754, 755–56 (R.I.2000). In so doing, "our task is 'to discern whether any legally competent evidence supports the lower tribunal's decision and whether the decision[-]maker committed any reversible errors of law in the matter under review.'" *Sobanski,* 981 A.2d at 1022 (quoting *Pierce,* 962 A.2d at 1292). When we review for the existence of "legally competent evidence" we look for "some or any evidence supporting the agency's findings." *Auto Body Association of Rhode Island v. State Department of Business Regulation,* 996 A.2d 91, 95 (R.I.2010) (quoting *Environmental Scientific Corp. v. Durfee,* 621 A.2d 200, 208 (R.I.1993)). When we evaluate questions of law, our review is *de novo. Lynch v. Rhode Island Department of Environmental Management,* 994 A.2d 64, 70 (R.I.2010) (citing *Irons v. Rhode Island Ethics Commission,* 973 A.2d 1124, 1129 (R.I.2009)). If an error of law is found, it must "so infect[ ] the validity of the proceedings as to warrant reversal." *Cullen v. Town Council of Lincoln,* 850 A.2d 900, 903 (R.I.2004) (quoting *Kent County Water Authority v. State (Department of Health),* 723 A.2d 1132, 1134 (R.I.1999)). Accordingly, if the board did not lack competent

facts supporting its decision and did not commit legal errors "infect[ing] the validity of the proceedings," this Court will affirm its decision. *See id.; see also Sobanski,* 981 A.2d at 1022 (citing *Pierce,* 962 A.2d at 1292).

## III

### Analysis

#### A

#### Requirements for Receiving Accidental Disability Benefits Based on § 17–189

Before we delve into the merits of this case, a brief introduction to the City of Providence (city) Retirement System (system) is in order. Section 17–189 of the Providence Code lists the three retirement options available to members of the city's system: service retirement, ordinary-disability retirement, and accidental-disability retirement. Each type entitles a retiring member to a pension, but the amount of the pension differs depending on the type of retirement. *See* Providence Code § 17–189(2), (4), (6). For example, a recipient of ordinary-disability retirement receives a pension of no more than 45 percent of his final compensation, whereas the pension provided to a recipient of accidental disability retirement is equivalent to 66⅔ percent of the member's final compensation. *Id.* § 17–189(4)(b), (4)(c), (6)(b). "The sole difference between accidental and ordinary benefits is the manner in which an employee becomes disabled, which accounts for the difference in compensation." *Connelly v. City of Providence Retirement Board,* 601 A.2d 498, 500 (R.I.1992). In effect, the system bestows more lucrative benefits upon members who were disabled in the line of duty than upon members who were disabled outside of work.[7] Not surprising-

7. Per the requirements of ordinary-disability retirement, it is not necessary for the member

ly, entitlement to accidental-disability retirement's greater benefits requires a member to meet criteria that are more discriminating than the other two retirement options.[8] *Cf. Rossi v. Employees' Retirement System of the State of Rhode Island,* 895 A.2d 106, 111, 112 (R.I.2006) (explaining, based on the analogous state retirement system, that the qualifying requirements for accidental disability are more "stringent" than for service or ordinary disability retirement).

Pursuant to § 17–189(5), a member qualifies for accidental disability retirement if he can prove: (1) he is physically or mentally incapacitated for the performance of duties being performed at the time of the accident; and (2) the incapacity is "*a natural and proximate result of an accident* while in the performance of duty"; and (3) the definite time, place, and conditions of such duty that resulted in the disability; and (4) the disability is not the result of willful negligence or misconduct on the part of the member; and (5) the disability is not the result of age or length of service of the member; and (6) the application for benefits is filed within eighteen months of the accident. (Emphasis added.)

In its instant decision, the board confirmed that Pierce met the majority of the accidental disability criteria. Relying on the medical opinions of the examining physicians and the subcommittee's recommendation, the board found that Pierce is permanently disabled, his disability resulted

from the performance of his occupational duties, and his disability was not the result of willful negligence, misconduct, age, or length of service. However, despite noting that Pierce's most recent ankle accident occurred on the job and within eighteen months of his application, as required by the ordinance, the board refused to grant Pierce accidental-disability retirement. The board determined that Pierce's ankle disability resulted from multiple accidents and therefore, in contravention of the ordinance's terms, it was not the natural and "proximate result of an accident," namely the "specific" accident of June 2006.

## B

### Issues on Appeal

The salient issue before this Court is whether the board correctly interpreted § 17–189(5), particularly its "a natural and proximate result of an accident" language. In his petition, Pierce argues that the board's analysis contradicts the plain language of the ordinance's "an accident" requirement, which should be read in accordance with canons of statutory construction unless the ordinance espouses a different intent. Pierce contends that because § 17–189 does not direct a specific interpretation of "an accident," we must turn to an applicable canon, G.L.1956 § 43–3–4, which requires that singular constructions of a word also must include plural constructions.[9] Section 43–3–4

---

to show any particular reason or cause for his or her permanent disability. Providence Code § 17–189(3).

**8.** Qualifying for ordinary-disability retirement requires only that the member complete at least ten years of service and obtain three medical opinions confirming that the member is permanently disabled. Providence Code § 17–189(3).

**9.** Pierce relies on state statute G.L.1956 § 43–3–4 for the proposition that singular constructions include plural constructions. Although we agree that this statute applies to the instant ordinance, see *Murphy v. Zoning Board of Review of South Kingstown,* 959 A.2d 535, 541 (R.I.2008), the Providence Code, at § 1–2, "Rules of construction," contains its own mandate for interpreting singular words as plural. This Court expounds on the applica-

("Every word importing the singular number only may be construed to extend to and to include the plural number also, and every word importing the plural number only may be construed to extend to and to embrace the singular number also."). Based on this state statute and other persuasive authority, Pierce submits that the ordinance language requiring that the disability must be "a natural and proximate result of *an accident* while in the performance of duty" necessarily encompasses a disability caused by *multiple accidents* "in the performance of duty." (Emphasis added.) Pierce asserts that by requiring that "a specific accident * * * cause * * * Pierce's injury," the board's decision arbitrarily narrows the ordinance's language to mean that one and only one accident can cause the disability. According to Pierce, such an interpretation causes an unintended and "absurd result" because it precludes a member from receiving accidental-disability benefits if the member is unlucky enough to suffer two, on-the-job accidents that injure the same body part and result in a permanent disability. Because all three examining physicians concluded that he was permanently disabled as a result of workplace accidents, Pierce argues that he meets the requirements of the ordinance, and the board should have granted his application for accidental-disability retirement.

The board emphasizes that this Court must afford great deference to decisions made by administrative bodies and reiterates its assessment that any permanent disability proximately caused by more than one accident cannot qualify a member for accidental-disability retirement. It argues that Pierce failed to prove that his disability was proximately caused by a specific accident, namely that of June 29, 2006. It

additionally points out that the ordinance requires that an application must be filed within eighteen months of the accident causing the disability and contends that Pierce's accidents occurring prior to June 29, 2006, are beyond the eighteen-month window and thus are not relevant. The board also notes that, unlike the state disability pension statute, the instant ordinance does not contain any provisions for the aggravation of an injury or a reinjury.

■■■ We address the parties' arguments by parsing the "natural and proximate result of an accident" language into its two operative parts: "natural and proximate result" and "an accident." In so doing, we note that "[w]hen interpreting an ordinance, we employ the same rules of construction that we apply when interpreting statutes." *Murphy v. Zoning Board of Review of South Kingstown*, 959 A.2d 535, 541 (R.I.2008) (quoting *Ruggiero v. City of Providence*, 893 A.2d 235, 237 (R.I.2006)). "If the statute is clear and unambiguous, [this Court] must enforce it as written by giving the words of the [ordinance] their plain and ordinary meaning." *Id.* "However, when interpreting the language of an ordinance that is unclear and ambiguous, we must 'establish[ ] and effectuate[ ] the legislative intent behind the enactment.'" *Pawtucket Transfer Operations, LLC v. City of Pawtucket* 944 A.2d 855, 859 (R.I. 2008) (quoting *State v. Fritz*, 801 A.2d 679, 682 (R.I.2002)).

## C

### "A Natural and Proximate Result"

Providence Code § 1–2, "Rules of construction," requires that the interpretations contained in this section "*shall be* placed on the words and phrases hereinafter mentioned, *unless* such construction or

bility and effect of § 1–2 on the instant ordi- nance in the analysis section below.

*interpretation* shall be *manifestly inconsistent* with the *evident intent* of the city council." (Emphases added.) Within this section, the Providence Code dictates how to define and interpret the "nontechnical and technical words" that appear in its ordinances. *Id.* First instructing that "[w]ords and phrases shall be construed according to the common and approved usage of the language," the Providence Code goes on to explain that "technical words and phrases and *such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood according to such meaning.*" *Id.* (emphasis added.) Consequently, statements made by a subcommittee member that "attorneys * * * [have] confused the application of an accidental disability as opposed to multiple injuries with tort law" and that "the ordinance doesn't use tort law to determine whether or not it is an accidental disability" are not accurate.

██ In our view, the phrase "a natural and proximate result of an accident" has "acquired a peculiar and appropriate meaning in law" as required by Providence Code § 1–2. *See Danielsen v. Eickhoff,* 159 Neb. 374, 66 N.W.2d 913, 915 (1954) ("Proximate cause is a legal concept with a particular meaning in the law. It does not fall in that class of words or phrases where the meaning is commonly known and understood by the lay public"). Moreover, because the accidental-disability ordinance does not define the terms "natural" and "proximate" to the contrary, we adhere to the Providence Code's rule of construction requiring that we apply the legal definitions of these terms. *See Kelly v. Marcantonio,* 678 A.2d 873, 876 (R.I.1996) ("When the General Assembly defines a word or a phrase used in its enactment, that definition is binding upon this [C]ourt."); *see also State v. Burr,* 79 Fla. 290, 84 So. 61, 74 (1920) ("Where a rule of construction is contained in the statute itself, that rule should be applied if it is necessary to use any rules of construction in determining the meaning or effect of the law.").

 Recounting elementary tort law,[10] we recognize that "natural" connotes the "consequences which are normal, not extraordinary, [and] not surprising in the light of ordinary experience." W. Page Keeton et al., *Prosser and Keeton on Torts,* § 43 at 282 (5th ed.1984). The word "proximate," in the legal context of "proximate cause," requires a factual finding that the "harm would not have occurred but for the [accident] and that the harm [was a] natural and probable consequence of the [accident]." *DiPetrillo v. Dow Chemical Co.,* 729 A.2d 677, 692–93 (R.I.1999) (emphasis omitted) (quoting *Wells v. Uvex Winter Optical, Inc.,* 635 A.2d 1188, 1191 (R.I.1994)). Effectively, "[p]roximate cause is a more exacting standard than simple 'but for' causation." *State v. Lead Industries Association, Inc.,* 951 A.2d 428, 451 (R.I.2008) (quoting *Tavares v. Aramark Corp.,* 841 A.2d 1124, 1128 (R.I. 2004)).[11]

---

10. Although this case is not a negligence lawsuit, the principles of injury causation elucidated by tort law are sufficiently analogous to the instant issue of disability causation to render this area of law eminently useful to our analysis. *See, e.g., City of Cedar Rapids v. Municipal Fire and Police Retirement System of Iowa,* 526 N.W.2d 284, 288 (Iowa 1995) (using tort law to define the statute's otherwise undefined terms, "natural" and "proxi-

mate," which appeared within the "accidental disability retirement" code section).

11. Dean William Lloyd Prosser assists this Court in putting a finer point on the definition, which often escapes the layman: " 'Proximate cause'—in itself an unfortunate term—is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's con-

We note that Dr. Geffroy's follow-up letter did not ask the three examining physicians whether Pierce's disability was a "proximate result" of the 2006 injury, nor did he provide the physicians with a legal definition of the word "proximate." Rather, in his follow-up inquiries, Dr. Geffroy asked the misinforming question, clearly based on the board's interpretation of the ordinance, whether Pierce's disability "[was] solely the result of the accident [on] 6/29/06" or whether multiple accidents were responsible for his condition. Because "sole cause," meaning one and one only, and "proximate cause" are not synonymous, we look to the whole of the physicians' medical opinions to discern whether their findings established that the 2006 accident was a proximate cause of Pierce's disability. Here, establishing proximate cause requires a finding that (1) "but for" the 2006 accident, Pierce would not have become permanently disabled, and (2) Pierce's permanent disability was "a natural and probable consequence of the [2006 accident]." *See DiPetrillo*, 729 A.2d at 692.

Based on this record, "but for" the June 2006 on-the-job accident, Pierce was able to perform his full duties as a firefighter. All of the physicians recognized that Pierce was on active duty directly prior to and at the time of the 2006 injury and permanently disabled directly afterwards.

With the exception of Dr. McLennan,[12] the other two physicians did not indicate that Pierce would have become disabled regardless of the June 2006 accident. In fact, Dr. Morgan and Dr. Updegrove opined that all of the accidents and traumas, including the 2006 accident, played a causal role in disabling Pierce. Based on their observations and the fact that Pierce was able to work at full capacity prior to his June 2006 accident, we hold that "but for" this accident Pierce would not have become permanently disabled.

▇▇ From this record, we also ascertain that Pierce's permanent disability was "a natural and probable consequence of" the 2006 accident.[13] *See* W. Page Keeton et al., § 43 at 282 (stating that "natural" consequences are those "which are normal, not extraordinary, [and] not surprising in the light of ordinary experience"). Furthermore, although Dr. McLennan indicated that the 1994 injury was the most substantial injury, the other two physicians, Dr. Morgan and Dr. Updegrove, did not distinguish Pierce's workplace accidents based on their severity or specify that one accident was the most substantial factor causing his permanent condition. Essentially, their medical opinions stated that each accident, including the 2006 accident, was part of the causal matrix that disabled Pierce. Based on these medical state-

---

duct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond.' " W. Page Keeton et al., *Prosser and Keeton on Torts*, § 41 at 264 (5th ed.1984).

12. Doctor McLennan's response to Dr. Geffroy's follow-up letter indicated that the 1994 fracture was the most substantial injury and that Pierce likely would have been rendered disabled by the ensuing degenerative arthritis regardless of his duties.

13. Although hitting an ankle against a stair arguably may not cause another firefighter to

become permanently disabled, that Pierce endured this outcome does not preclude our determination that the 2006 injury was one of the proximate causes resulting in Pierce's disability. *See Stoner v. District of Columbia Police and Firemen's Retirement and Relief Board*, 368 A.2d 524, 529 (D.C.1977) ("The mere fact that one officer may be more susceptible to disabling injury than another cannot be treated as dispositive without careful analysis of the circumstances or events which caused the asserted propensity to manifest itself in a disabling condition.").

ments, we hold that the physicians determined that the June 2006 injury was one of the proximate causes resulting in Pierce's disability. We reiterate that "proximate cause 'need not be the sole and only cause. It need not be the last or latter cause. It's a proximate cause if it concurs and unites with some other cause which, acting at the same time, produces the injury of which complaint is made.'" *Hueston v. Narragansett Tennis Club, Inc.*, 502 A.2d 827, 830 (R.I.1986) (affirming a proximate cause jury instruction); *see also Funston v. School Town of Munster*, 849 N.E.2d 595, 600 (Ind.2006) ("There can be multiple proximate causes of a resulting event. * * * [P]roximate cause requires only that a plaintiff's negligence be 'a' proximate cause, that is, one of the proximate causes.").

Thus, we conclude that the June 2006 accident, which occurred within eighteen months of Pierce's application as required by the ordinance, was a qualifying proximate cause that resulted in Pierce's disability. As such, by requiring Pierce to show that the June 2006 accident was the *sole* cause of his disability, the board made a legal error that "infected the validity of the proceedings." *See Cullen*, 850 A.2d at 903.

## D

### "Of an Accident"

■ Furthermore, this Court holds that the board erroneously limited the phrase "of an accident" to mean one and only one accident. The Providence Code's § 1–2 "Rules of construction" expressly states that "[a] word importing the singular number only may extend and be applied to several persons and things as well as to one person and thing." *See also* § 43–3–4. Applying this canon to the language in the ordinance, "a natural and proximate result of *an accident* while in

performance of duty," Providence Code § 17–189(5), § 1–2 instructs that "an accident" must be read to include multiple accidents. (Emphasis added.) As such, we disagree that Pierce was ineligible for accidental-disability retirement simply because he experienced more than one work-related accident. Here, the majority of the examining physicians opined that Pierce's ankle disability was caused by a cumulative effect of all work-related accidents, including the June 2006 injury. Properly construing the ordinance to mean that a disability may be caused by multiple accidents, it becomes evident that Pierce meets all requirements for accidental-disability retirement. Each accident occurred "while in the performance of duty," and his disability was not "the result of willful negligence or misconduct * * * [nor was it] the result of age or length of service." Providence Code § 17–189(5). The June 2006 accident, which was one of the proximate causes of his disability, occurred within the required eighteen months of his application for accidental-disability retirement. Accordingly, we hold that the board improperly denied Pierce's application because he had experienced multiple, accidental ankle fractures and sprains in the workplace. We note that authority from other jurisdictions supports our reasoning.

For example, in *Bridgwood v. Board of Trustees of the New York City Fire Department Article 1–B Pension Fund*, 204 A.D.2d 629, 612 N.Y.S.2d 621, 622 (1994), a firefighter sustained two "service-connected injur[ies] to his neck." After the first injury, he returned to full-duty status, but several months later he was injured again and was unable to return to work. *Id.* Although there were two separate accidents resulting in injuries to his neck, the court held that his "disability was the natural and proximate result of *a*

*service-related accident*" as required by the ordinance because "each of the examining physicians who expressed a medical opinion as to the connection between the *accidents* and the *disability* concluded that a causal relationship existed." *Id.* (emphases added). Likewise here, Pierce's examining physicians agreed that a causal relationship existed between his workplace accidents and his disability. Moreover, although the ordinance contained the singular term, "a service-related accident," the firefighter in *Bridgwood* was not precluded from meeting the ordinance requirements even though his disability was causally connected to two accidents. Equally here, we hold that Pierce's multiple ankle accidents do not preclude his eligibility for accidental-disability retirement because he applied for these retirement benefits within eighteen months of the June 2006 accident, one of the proximate causes of his disability.

Additionally, in *Hersl v. Fire & Police Employees' Retirement System*, 188 Md. App. 249, 981 A.2d 747, 758 (2009), the Baltimore City line-of-duty disability pension required "that the incapacitation be 'as the result of *an injury* arising out of and in the course of the actual performance of duty[,]'" (quoting Baltimore City Code, Art. 22, § 34(e-1)(*l*)(i) (emphasis added)). In that case, the claimant's knee was permanently disabled after a line-of-duty accident. *Id.* However, the claimant had injured his knee outside of work on two prior occasions, so the "permanency found by the medical experts [was] not attributed *solely* to the injuries" occurring in the line of duty. *Id.* Analogous to the instant board's contentions, the Baltimore board argued that the ordinance required "that the proximate cause of [a line-of-duty] permanent disability must be an exclusive cause" and no off-duty injuries (or as in the case before us, injuries outside the ordinance's time limitation) could contribute to causation. *Id.* The *Hersl* court

was not persuaded by the board's argument. *Id.* In reversing, the court noted that the claimant was not disabled by the prior knee injuries because he was "on active duty and performing the duties of a firefighter when he was injured," and there was "nothing in that [ordinance] section indicating * * * that, in order to be eligible for [a line-of-duty] disability pension, a claimant, who is injured while fully performing the duties of his job classification, must never have suffered a prior, non-[line-of-duty] injury to the body part involved in the claim." *Id.* (citing *Adams v. Board of Trustees of the Employees' Retirement System of Baltimore*, 215 Md. 188, 137 A.2d 151, 154–55 (1957)); *see also Bowers v. Firefighters' Retirement System*, 6 So.3d 173, 179 (La.2009) (holding, based on a statute requiring that an employee be "totally disabled from *an injury* received in the line of duty," that the claimant was entitled to the benefits because "she was totally disabled as a result of the heavy lifting associated with her job, even if the heavy lifting was not the sole cause of her disability") (quoting La.Rev. Stat. Ann. § 11:2258(B)(1)). Identical to the *Hersl* claimant, Pierce was on active duty performing the full responsibilities of firefighting prior to and at the time of the June 2006 accident. Accordingly, although the "permanency found by [Pierce's] medical experts [wa]s not attributed solely to the" 2006 work-related accident, we hold that Pierce is still entitled to the requested retirement benefits. Pierce's application met the ordinance's criteria, namely that the June 2006 work-related injury, which occurred within eighteen months of his application, was a proximate cause of his disability.

## IV

### Conclusion

For the reasons elucidated in this opinion, we hold that the board misinterpreted

the ordinance when it determined that a single, work-related accident must proximately cause a retirement-system member's disability. Based on applicable canons of statutory construction (included in the Providence Code's "Rules of construction") and the legal definition of proximate cause, this Court concludes that the proper interpretation of the ordinance permits a retirement-system member to qualify for accidental-disability retirement even if the member's disability was caused by multiple, work-related accidents. Upon our correction of the board's legal reasoning, we hold that the physicians' opinions establish that multiple workplace accidents, including the accident on June 29, 2006, proximately caused Pierce's permanent ankle disability. Because this June 2006 accident occurred within the eighteen-month limitation period and was a proximate cause of his disability, Pierce's application met all requirements of the accidental-disability retirement ordinance. Accordingly, we quash the board's decision to deny Pierce these benefits. The case is remanded to that tribunal with directions to award Pierce accidental disability retirement benefits retroactive to the date of his original retirement on June 28, 2007.

