**Supreme Court**

No. 2013-252-M.P.

Michael Morse                                    :

v.                                    :

Employees Retirement System of the City          :
           of Providence.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Michael Morse                          :

v.                          :

Employees Retirement System of the City     :
of Providence.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** This case came before the Supreme Court for oral argument on March 30, 2016, pursuant to a writ of certiorari filed by the petitioner, Michael Morse. In his petition, Morse sought review by this Court of a decision of the Retirement Board of the Employees Retirement System of the City of Providence (the board) dated July 24, 2013. In its decision, the board denied Morse's application for an accidental disability pension. Morse argues that the decision should be quashed because it was based solely on the fact that Morse did not satisfy the board's self-imposed "unanimity rule," requiring that all three physicians who examined Morse agree that the applicant was permanently disabled as a result of a work-related injury. For the reasons stated herein, we quash the decision of the board, and remand the case for further factfinding.

- 1 -

**1**

**Facts and Travel**

The petitioner is a long serving fire-rescue captain on the Providence Fire Department, who has been employed by the city since August 5, 1991. On October 11, 2012, petitioner submitted an application for accidental disability retirement, claiming that he was disabled by a work-related injury that occurred on August 10, 2012, when, after responding to an EMS call, he injured his back lifting a patient at Rhode Island Hospital. It is significant that petitioner's medical records reveal that, during the course of his career, he suffered from three separate work-related injuries; the first incident occurred on September 21, 2009, and the second incident on October 14, 2011. Each of these injuries occurred while petitioner was working, involved injuries to his lower back, and resulted in petitioner being placed on "injured on duty" (IOD) status for some period of time.

After the second reported injury, petitioner's treating physician recommended that he cease heavy lifting at work, but he was nonetheless released to work. After the third injury, a physician at Rhode Island Hospital advised that he not return to work until he was feeling better and recommended that he see a spine specialist for a cortisone injection. The petitioner presented to Dr. Katherine Williams, at the Brain and Spine Neurosurgical Institute. She determined that petitioner was not able to return to work and that he could not perform the duties of a firefighter. Since his most recent injury, petitioner has not returned to work and has remained on IOD status for a period approaching four years.

Pursuant to the Providence Code of Ordinances, petitioner was evaluated by three independent medical examiners (IMEs), Mary L. Lussier, M.D., Norman M. Gordon, M.D., and Thomas F. Morgan, M.D. Doctor Lussier examined petitioner in early 2013 and reviewed his

medical records.  She rendered a diagnosis of "[c]hronic low back pain with past brief radicular symptoms in both legs, with degenerative disc disease in the [lumbosacral] spine most pronounced at L4/5."  In Dr. Lussier's opinion, petitioner was permanently partially medically disabled, and his disability was causally related to the most recent work-related injury, which occurred on August 10, 2012.  She further opined that, although he had experienced other work-related injuries in the past, the last injury "made the most definitive change in his work status."  Due to his work-related injury, "[h]e can perform tasks that do not include bending and lifting and that do allow for him to frequently change position," but he was unable to return to his previous duties.

Doctor Gordon examined petitioner in March 2013.  He also reviewed the medical records and conducted a physical exam, finding that "[h]e has limited range of motion of the back, particularly in flexion, which causes him a lot of pain. * * * Straight leg raising was accompanied by discomfort in the back, but he was able to go through at least 45 degrees."  It was Dr. Gordon's opinion that

> "this gentleman is disabled from his current duties as a fire rescue captain and although I cannot point to a single injury or accident that has been responsible for this, it clearly is an accumulation of the multiple back injuries that he has had, documented at least since 2009, and probably before that as well."

He concluded that "[u]nfortunately, these injuries and persistent back pain impact fully on what he can do as a result of the performance of his very strenuous, heavy activities as part of a firefighting rescue captain.  I do not believe that there is any light work available in this category * * *."

The third examiner, Dr. Morgan, came to a different conclusion.  Although he diagnosed petitioner with multilevel degenerative disc disease and facet joint arthritis of the lumbar spine, it

was his opinion that petitioner's chronic low back pain showed no signs of permanent injury from the lifting incidents on or before August 10, 2012. He further opined that petitioner "does not qualify for a work injury impairment to be considered for accidental disability" and that "[t]he prognosis for his chronic back pain is good and based on today's examination, there are no restrictions or limitations that should prevent him from returning to work."

The petitioner attended a hearing on June 26, 2013, before the board's medical subcommittee, at which his attorney was permitted to argue on his behalf. The subcommittee chair informed petitioner about the procedure of the subcommittee, explaining that they were going to "hear from the doctor, if you have any questions you can question the doctor through me and then we may have some questions and then we'll discuss it among ourselves." Doctor Guy Geffroy, medical adviser to the board, said that he had reviewed petitioner's medical records and the IME reports, but said that he was not a member of the board. Dr. Geffroy advised the subcommittee that they should not grant petitioner accidental disability benefits because only one of the IMEs concluded that petitioner was disabled as the result of a work-related injury. He explained that Dr. Gordon found that his disability was the result of multiple injuries, and "he interprets proximate result of an accident as including multiple back injuries, which our Ordinance does not. So, I have to conclude that if you analyze, carefully analyze what he did really think, he also is not in favor of this meeting the criteria of an accidental disability retirement."

Relying on this Court's decision in Pierce v. Providence Retirement Board, 15 A.3d 957 (R.I. 2011), the Senior Assistant City Solicitor then informed the subcommittee that a work-related disability indeed could be proximately caused by several on-the-job incidents. The solicitor then asked Dr. Geffroy if that would change his recommendation. He responded, "No,

it doesn't. It's beside the point because one of the consultants considers him not to be disabled. So, we don't have unanimity regardless." After further discussion between the subcommittee members and the attorneys on the impact of the Pierce decision on petitioner's claim, Dr. Geffroy said, "It's [a] moot point because one of the consultants doesn't find him to be disabled."

The city solicitor then addressed petitioner's argument that, in view of the fact that Dr. Morgan's evaluation was so different from the other two IMEs, he should be granted the opportunity to be examined by another physician. The city solicitor advised the subcommittee that it had granted such a request in the past, saying "[I]t's not unprecedented that we've actually disqualified an IME or sought the advice of another physician." The petitioner's attorney then argued that the subcommittee should either grant petitioner a new examination or reconsider its adherence to the unanimity rule. Although petitioner's counsel conceded that the board had been applying the rule for several years, he argued that it was not set forth in § 17-189(6) of the ordinance that addresses accidental disability pension status.

With respect to the unanimity rule, the city solicitor advised the subcommittee that the issue had come up several years before and the board decided that, even though the unanimity rule was not explicitly required by the ordinance, the city council, in 1998, had removed language requiring a mere majority of the IMEs to agree on accidental disability, thus implicitly approving the board's employment of the unanimity rule. The subcommittee chairman, seeking clarification, then had the following exchange with the city solicitor:

> "[Chairman]: Okay. Just quickly, this board can vote with two doctors and one against, is that correct? We don't need, there's no requirement that we have unanimity, that['s] our policy and that's what we've done.

"[City Solicitor]: This board has adopted the unanimity policy and clearly if we want to change that or go in a different direction it's –

"[Chairman]: If we have the votes to pass this it wouldn't be illegal would it?

"[City Solicitor]: No, no. But I –

"[Chairman]: So, I think his argument that says that we – that – I think that his argument falls short to a certain extent when he says that this board requires it, although we may require it as a policy we don't – we can vote –

"[City Solicitor]: I can tell you –

"[Chairman]: – different.

"[City Solicitor]: – being on the board since probably, since 1998, there have been instances where there's been two out of three and the board's granted it –

"[Chairman]: Right.

"[City Solicitor]: – and discounted the IME of a doctor that said the individual wasn't totally, permanently disabled.

"[Chairman]: Right. So, his argument, although I understand his argument, is not – it assumes that we can't do it, which I believe we can do it.

"[City Solicitor]: Right. I mean, our position is that you need all three doctors to be consistent that the individual fulfills these requirements. There have been instances, off the top of my head I don't know, but the board has discounted a doctor who denied and found a basis for it."

The subcommittee then, without any further discussion, voted to recommend to the board that the application for accidental disability retirement be denied.

When the full board met, the chairman of the subcommittee moved to deny petitioner's application "based on not unanimity [sic] of doctors." The petitioner's attorney was permitted to restate his argument against the unanimity rule to the full board. He argued that the longstanding

interpretation by the board, that the ordinance suggests that a unanimity finding is required, was erroneous. He averred that the unanimity rule was not only contrary to the language of the ordinance, but that, by adopting the rule, the board had, in essence, "delegate[d] its authority and power to one physician." The petitioner's counsel urged the board to consider the consequences of their rule:

> "Stop and think about that. Every time someone comes before you no matter how clear cut two of the three doctors are and no matter how much of the overwhelming evidence that may be before the Board, because one physician fails to make one check mark in that checklist of things that he's provided is denied. And this Board doesn't even consider any of the evidence, it simply says one of the doctors failed to satisfy one of the requirements[,] end of game. That's abdicating your responsibility of the Board, with all due respect, you have the responsibility to take into consideration all of the evidence."

When petitioner's attorney had concluded, the medical subcommittee chairman responded that "the Sub-Committee did hear from [petitioner's attorney], we looked at all the facts and made the recommendation." Without further discussion, the board voted to deny petitioner's application. There were no dissenting votes.

The board issued a two-and-a-half page written decision, dated July 24, 2013, including the following pertinent findings of fact:

> "6. In connection with his Application, Morse was examined by Dr. Mary L. Lussier ('Dr. Lussier'), who diagnosed Morse as unable to perform the duties of his job and noted that he is permanently and partially medically disabled. Dr. Lussier noted that Morse's incapacity to work was a result of multiple accounts of work-related injuries, and that the disability was causally related to the work-related injury of August 10, 2012 with the last one making the most definitive change to his medical status. On March 30, 2013, Dr. Lussier expressed in a follow-up report that her medical opinion of Morse's condition did not change.

> "7. In connection with his Application, Morse was examined by Dr. Thomas Morgan ('Dr. Morgan'), who notes that Morse shows

- 7 -

no sign of permanent injury as a result of the August 10, 2012 lifting incident. Based upon his examinations, Dr. Morgan stated that there are no restrictions or limitations that should prevent Morse from returning to work. After a March 18, 2013 follow-up, Dr. Morgan's medical opinion of Morse's condition did not change.

"8. In connection with his Application, Morse was examined by Dr. Norman M. Gordon ('Dr. Gordon'), who states that Morse is disabled as to his current duties as a fire rescue captain and that Morse's disability is a result of an accumulation of multiple back injuries that have occurred since 2009 and probably before such date as well."

The decision contained the following conclusion:

"when awarding an accidental disability retirement, the Board requires unanimity of decision of three (3) independent medical examiners stating that the applicant is totally and permanently disabled as a result of the alleged disability. In this instance, only two (2) of the three (3) independent medical examiners opine[d] that Morse is totally and permanently disabled. Dr. Morgan determined that Morse is able to perform his stated duties. The evidence provided does not establish that Morse is incapacitated for the performance of duty and ought to be retired pursuant to said ordinance.

"The independent physician reports and other evidentiary material provided to the Subcommittee and full Board do not support granting an accidental disability retirement pursuant to the Providence Code of Ordinances addressed above. * * * For all the foregoing reasons, it is the decision of this Board to deny Morse's Application."

The petitioner then sought this Court's review by filing a writ of certiorari, which we granted on February 10, 2014.

**2**

**Standard of Review**

Decisions of the board are reviewed by this Court via a writ of certiorari. See, e.g., Article I, Rule 13(a) of the Supreme Court Rules of Appellate Procedure; Pierce, 15 A.3d at 961.

"When reviewing a case before this Court on a writ of certiorari, we 'scour the record to discern whether any legally competent evidence supports the lower tribunal's decision and whether the decision[-]maker committed any reversible errors of law in the matter under review.'" Cullen v. Town Council of Lincoln, 850 A.2d 900, 903 (R.I. 2004) (quoting Kent County Water Authority v. State (Department of Health), 723 A.2d 1132, 1134 (R.I. 1999)). "When we review for the existence of 'legally competent evidence' we look for 'some or any evidence supporting the agency's findings.'" Pierce, 15 A.3d at 961 (quoting Auto Body Association of Rhode Island v. State Department of Business Regulation, 996 A.2d 91, 95 (R.I. 2010)). We review questions of law de novo. Id. (citing Lynch v. Rhode Island Department of Environmental Management, 994 A.2d 64, 70 (R.I. 2010)). "If an error of law is found, it must 'so infect[] the validity of the proceedings as to warrant reversal.'" Id. (quoting Cullen, 850 A.2d at 903).

"When interpreting an ordinance, we employ the same rules of construction that we apply when interpreting statutes." Murphy v. Zoning Board of Review of South Kingstown, 959 A.2d 535, 541 (R.I. 2008) (quoting Ruggiero v. City of Providence, 893 A.2d 235, 237 (R.I. 2006)). "If the statute is clear and unambiguous, we must enforce it as written by giving the words of the [ordinance] their plain and ordinary meaning." Id. (quoting Ruggiero, 893 A.2d at 237). However, if the language "is unclear and ambiguous, we must 'establish[] and effectuate[] the legislative intent behind the enactment.'" Pawtucket Transfer Operations, LLC v. City of Pawtucket, 944 A.2d 855, 859 (R.I. 2008) (quoting State v. Fritz, 801 A.2d 679, 682 (R.I. 2002)). "We are also mindful, however, that 'under no circumstances will this Court construe a statute to reach an absurd result.'" Berman v. Sitrin, 991 A.2d 1038, 1043 (R.I. 2010) (quoting Smiler v. Napolitano, 911 A.2d 1035, 1041 (R.I. 2006)).

**3**

**Analysis**

The petitioner argues that the board's decision should be quashed because the board committed an error of law by interpreting the Providence Code of Ordinances § 17-189(6) to require unanimity of the three IMEs in determining that petitioner is totally and permanently disabled as the result of a work-related injury before it will grant petitioner accidental disability benefits. The petitioner asserts that adopting such a rule is contrary to the plain language of the ordinance and that the effect of such a determination is that the board has abdicated all discretion and responsibility to consider applications for an accidental disability pension under the ordinance by deferring to the opinion of a single disagreeing physician.

The board argues that this Court should affirm its decision because the unanimity rule is required by the plain language of the ordinance and by legislative history. The board suggests that it lacks discretion to deviate from the unanimity rule and proposes that it is vested with discretion only in situations where the three IMEs recommend the disability. In those instances, the board can choose to deny an application as the result of an additional investigation.

There are three avenues for a city employee to receive retirement benefits under the Providence Code: service retirement, ordinary disability retirement, and accidental disability retirement. This Court has addressed the Providence Retirement Board's interpretation of the Retirement System Ordinance on more than one occasion, most recently in 2011 in Pierce, 15 A.3d at 962. We have said that "entitlement to accidental-disability retirement's greater benefits requires a member to meet criteria that are more discriminating than the other two retirement options." Id. However, we have never addressed the discrete issue that confronts us in this case;

whether the board is entitled to impose a unanimity rule on applicants seeking accidental disability benefits.[1]

The pertinent language of § 17-189(6) is as follows:

> "Accidental disability retirement: * * * If a medical examination conducted by three (3) physicians certified in the field reasonably related to the member's alleged injury engaged by the director of personnel and such investigation as the director of personnel may desire to make shall show that said member is physically or mentally incapacitated for the performance of service any [sic] as a natural and proximate result of an accident, while in the performance of duty, and that such disability is not the result of willful negligence or misconduct on the part of said member and is not the result of age or length of service, and that such member should be retired, and the physicians who conducted the examination shall so certify to the retirement board stating the time, place and conditions of such service performed by said member resulting in such disability, the retirement board shall retire the said member for accidental disability."

The board urges that, despite the fact that the ordinance does not "literally contain the word 'unanimous,'" unanimity "is clearly required by the plain and unambiguous language" of the phrase "and the physicians who conducted the examination shall so certify to the retirement board stating the time, place and conditions of such service * * * resulting in such disability." In our opinion, however, the ordinance is not well drafted and is certainly not clear and unambiguous.

To the contrary, it is our opinion that the ordinance is subject to a variety of constructions and is therefore, by definition, ambiguous. Black's Law Dictionary 97 (10th ed. 2014); see also State v. Hazard, 68 A.3d 479, 485 (R.I. 2013) ("[a]mbiguity exists * * * when a word or phrase

---

[1] The board points to a footnote in Pierce v. Providence Retirement Board, 15 A.3d 957, 962 n.8 (R.I. 2011), to support its argument that the plain language of the ordinance supports the unanimity rule. Although we recognize that this Court referred to the requirement that three physicians must certify that the applicant is disabled, that reference specifically identified that as a requirement for ordinary disability retirement, which was not an issue in Pierce. In our opinion, it has no impact on this case.

in a statute is susceptible of more than one reasonable meaning"). In construing the intent of the drafters, we first look to the legislative history.

The Board contends that the General Assembly amended the Retirement System Act[2] in 1975 by P.L. 1975, ch. 158, § 9 to say:

> "If a medical examination conducted by three physicians engaged by the retirement board and such investigation as the retirement board may desire to make shall show that said member is physically or mentally incapacitated * * * and that such member should be retired, in the event a majority of the physicians who conducted the examination shall so certify to the retirement board stating the time, place and condition of such service performed by said member resulting in such disability and the retirement board shall retire the said member for accidental disability." (Emphasis added.)

The city council then amended the ordinance in 1998 and removed the phrase "in the event of a majority of" from the provision. The board asserts that, by removing that majority language, the city council intended to provide for the unanimity rule in the ordinance.

The board argues, especially in view of the legislative history, that the city council, when it amended the ordinance, intended to impose a unanimity rule on all applicants for accidental disability retirement. Nevertheless, we are not persuaded that such a rule should be read into the ordinance. First, if that was indeed the city council's explicit intention, it surely had the opportunity and ability to specifically include the unanimity rule. Rather than simply removing

---

[2] The Providence Retirement System was enacted by a special statute by the Legislature, P.L. 1923, ch. 489, entitled "The Providence Retirement Act," which "established a comprehensive system of contributions, benefits, and regulations relating to pensions to be paid to firefighters, police officers, and civilian employees of the city." Betz v. Paolino, 605 A.2d 837, 838 (R.I. 1992). The Retirement System Act has "become part of the local ordinances of the city of Providence by reason of the adoption of a home-rule charter in 1980, which became effective subsequent to ratification by the General Assembly and by a referendum vote of the citizens of Providence on January 3, 1983." Id. Therefore, since 1983, the Providence City Council has had exclusive legislative power over the Providence Retirement System. Id. at 840.

the majority language, it could also have added language requiring that all three physicians be unanimous in their determinations.

Second, we read the phrase—"and such investigation as the director of personnel may desire to make"—as an explicit grant of discretionary power that cannot be reconciled with the board's interpretation that it has no discretion to deviate from the unanimity rule. Furthermore, we find the operative language in this provision to be the following:

> "If a medical examination conducted by three (3) physicians certified in the field reasonably related to the member's alleged injury engaged by the director of personnel <u>and such investigation as the director of personnel may desire to make shall show that said member is physically or mentally incapacitated</u> * * *, the retirement <u>board shall retire</u> the said member for accidental disability." (Emphases added.)

That phrase, "shall show," directs the board to review and interpret all the evidence. If the evidence before the board "shall show" that the applicant is disabled as a result of a job-related injury, then the board "shall retire the said member." The determination of whether the evidence shows incapacity is within the discretion of the board. If two independent medical examiners, plus the member's treating physicians, opine that the member is disabled, and one physician disagrees, it is certainly reasonable to conclude that the evidence is that the member is disabled. Of course, the board has the authority, indeed the obligation, to review the opinions of each of those physicians and determine why there is a disagreement. The board certainly has the ability to determine that the one dissenting physician is more persuasive than the others, but that decision must be based on a reasoned analysis of the evidence before the board.

However, once the board determines that the evidence shows that the applicant is disabled, then the board "shall retire the said member." "We have held that the use of the word 'shall' contemplates something mandatory or the 'imposition of a duty.'" <u>Castelli v. Carcieri</u>,

961 A.2d 277, 284 (R.I. 2008). "The use of the word 'shall' is readily distinguishable from the use of the word 'may,' which implies an allowance of discretion." Id. The construction that the board urges on us would leave much of the wording of the provision a nullity and diminish the board to performing a ministerial function. That simply cannot be what the city council intended.

Finally, we hold that the board's interpretation that the ordinance requires unanimity of the evaluating physicians would lead to an absurd result. Our review of the board's interpretation of the ordinance is bolstered by the reasoning of the Appellate Court of Illinois, for the Third District, in a remarkably similar case. In Coyne v. Milan Police Pension Bd. ex rel. Jones, 807 N.E.2d 1276 (Ill. App. Ct. 2004), a majority of the court determined that the pension board could not reasonably interpret its pension code as requiring unanimity of the examining physicians on the basis of the following reasoning:

> "We believe the Board's interpretation of section 3–115 yields a result that is both absurd and unconstitutional. * * * The opinion of a lone minority dissenter like Doctor Harris (five contrary opinions notwithstanding) would ipso facto defeat a pension claim, thus rendering section 3–115 a virtual summary dismissal provision. A pension board would have no use for an evidentiary hearing in such cases because, regardless of the weight of the claimant's evidence, and regardless of any credibility issues pertaining to the lone dissenting physician, the outcome of the case would be predetermined by the mere existence of a disagreement between witnesses. We cannot believe the legislature would establish the adjudicatory process outlined in the Pension Code expecting that the process would be so easily precluded." Coyne, 807 N.E. 2d at 1288-89.

We embrace that reasoning and conclude that the Providence City Council could not possibly have intended the retirement board's proceedings to be curtailed by the opinion of one physician.

Therefore, we are of the opinion that the retirement roard impermissibly wrote a unanimity requirement into the ordinance. The duty of the board is to review each member's

- 14 -

application for accidental disability retirement fairly, to cautiously review the medical evidence, to make factual findings on the record, and to articulate its reasons for either granting or denying a member's application pursuant to those factual findings. The board's adoption of the unanimity rule effectively abandoned its authority to a single disagreeing physician. Because the board failed to make any factual findings with regard to the petitioner's application, this matter must be remanded to the board for reconsideration. In so doing, the board must consider all of the evidence before it, indicating explicitly the reasons for finding the evaluation of one doctor to be more persuasive than the evaluations of the other two independent evaluations and those of the petitioner's several treating physicians, and articulate its reasoning for either granting or denying the petitioner's application.

**4**

**Conclusion**

For the reasons elucidated in this opinion, we hold that the board misconstrued the ordinance when it based its decision to deny the petitioner's application for accidental disability retirement on a self-imposed unanimity rule. Accordingly, we quash the board's decision to deny the petition for an accidental disability pension. The case is remanded to the retirement board with directions to reconsider the application in conformity with this opinion.



**TITLE OF CASE:**    Michael Morse v. Employees Retirement System of the City of Providence.

**CASE NO:**    No. 2013-252-M.P.

**COURT:**    Supreme Court

**DATE OPINION FILED:**    June 6, 2016

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**    Retirement Board of the Employee Retirement System of the City of Providence

**JUDGE FROM LOWER COURT**:

    N/A

**ATTORNEYS ON APPEAL:**

    For Petitioner:    Joseph F. Penza, Jr., Esq.
                            John D. Meara, Esq.

    For Respondent:  Kenneth B. Chiavarini, Esq.