May 2, 2019

Wanda I. Trinidad                :

v.                :

Employees' Retirement System of          :
        Providence.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| Wanda I. Trinidad | : |
| v. | : |
| Employees' Retirement System of Providence. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The petitioner, Wanda I. Trinidad (Trinidad), filed a petition for the issuance of a writ of certiorari seeking review of a decision of the Retirement Board of the Employee Retirement System of Providence (the board) denying Trinidad's application for accidental-disability retirement benefits, and instead awarding her ordinary-disability benefits.  This Court granted the petition, and Trinidad's case came before the Supreme Court for oral argument on March 27, 2019, pursuant to an order directing the parties to appear and show cause why the issues raised in this matter should not be summarily decided.  After considering the parties' memoranda and oral arguments, we are satisfied that cause has not been shown and we proceed to decide the case at this time.  For the reasons set forth in this opinion, we affirm the board's decision to deny Trinidad accidental-disability benefits.

**I**

**Facts and Travel**

Beginning on March 9, 2004, Trinidad served as a bus monitor for the City of Providence.  On May 9, 2014, Trinidad submitted an application for accidental-disability retirement benefits to the respondent, the Employees' Retirement System of Providence

- 1 -

(respondent), alleging that she had suffered a work-related injury on January 26, 2011.[1] Included with her application was a written statement by Trinidad detailing the events that she maintained caused her injury. In her statement, Trinidad explained that, while working as a bus monitor, she injured her left wrist when she walked to the back of a moving bus to assist a child with a nosebleed and caught her hand on a seat.

After the alleged incident, Trinidad visited the emergency room and was initially diagnosed with a sprain. However, her pain persisted, and Trinidad sought treatment from Gregory Austin, M.D., an orthopedic surgeon. While treating with Dr. Austin, Trinidad underwent an MRI, "which demonstrated question of triangular fibrocartilage tear." In addition, Trinidad received cortisone injections and a wrist sprint. Eventually, Dr. Austin performed an arthroscopy, which revealed "a fair amount" of swelling, "but no specific or repairable" tears. Following the arthroscopy, Trinidad's problems continued, and she underwent a second MRI, which Dr. Austin determined revealed a tear. Dr. Austin ultimately recommended and performed "an ulnar shortening" surgery; nevertheless, Trinidad's symptoms remained.

In furtherance of her application, Trinidad underwent three independent medical examinations (IMEs), performed by three separate physicians selected by the board, to determine her eligibility for accidental-disability benefits pursuant to § 17-189(f) of the Providence Code of Ordinances governing accidental-disability retirement.

---

[1] Initially, the retirement office did not process Trinidad's application because § 17-189(f) of the Providence Code of Ordinances, governing accidental-disability retirement, provides that an "application to accomplish such retirement must be filed within eighteen (18) months of the date of the accident, unless a waiver is granted through a resolution approved by a majority of the city council." On November 17, 2014, the Providence City Council granted Trinidad a waiver of the eighteen-month period, and Trinidad reapplied for accidental-disability retirement on December 1, 2015.

The first doctor, Arnold-Peter C. Weiss, M.D., performed an IME and generated a report, dated April 14, 2016, detailing his evaluation. Therein, Dr. Weiss noted that Trinidad's pain was "of uncertain etiology far exceeding what one would expect from either the mechanism of injury or the treatment that's been provided." As to causality, Dr. Weiss explained, "I'm not sure that I can causally relate the patient's current upper extremity complaints of pain to her actual on-the-job incident as opposed to some other conversion disorder or other psychiatric reactive phenomenon." Doctor Weiss went on to explain that objectively he did not believe Trinidad was "totally disabled[,]" but he noted that, "[f]rom a subjective complaint, and the significant symptoms she's had," she may be disabled; he gave Trinidad an "[e]xtremely poor" prognosis. Lastly, Dr. Weiss concluded his report by noting that Trinidad's injury, if any, was "very insignificant," but stated that, "[e]ven if she objectively is not disabled and has no physical capabilities that are inappropriate at this juncture, psychologically I believe she's completely unable to use the left upper extremity due to fear, anxiety or some other conversion reaction disorder."

Next, Philip J. Reilly, M.D., performed an IME on April 19, 2016. In his report, Dr. Reilly opined "to within a reasonable degree of medical certainty that the patient's current left upper extremity pain and resultant disability are a result of the accident she sustained on January 26, 2011." Moreover, Dr. Reilly stated that Trinidad "has a permanent disability with regard to being employed as a bus monitor" and concluded that "she is simply unable to perform these activities." Doctor Reilly noted that there may be psychiatric influences that affect Trinidad's ability to recover, but determined that her overall prognosis was poor.

The third examining doctor, Jack D. Goldstein, M.D., explained his findings in a report dated April 28, 2016. Doctor Goldstein stated that it was unlikely that Trinidad would improve

to the point where she could return to her former job.  In addition, Dr. Goldstein stated: "Clearly her injury as stated is the initial and only cause of her current disability.  I feel that she is currently disabled from her previous job and this was entirely caused by the accident as described although it is difficult to assess what exactly was injured at the time of injury."

The matter came before the board's disability subcommittee (the subcommittee) for hearings regarding Trinidad's application.  After the subcommittee held hearings, it recommended to the full board that Trinidad's application be denied.  Accordingly, on January 25, 2017, the board voted to deny the application.  Then, on March 1, 2017, the board issued a written decision.  In its decision, the board provided findings of fact and summarized the IMEs of the three physicians.  The board concluded that "[t]he evidence provided does not establish that Trinidad is 'incapacitated for the performance of duty and * * * she shall be retired' pursuant to [§ 17-189(f)]."  The board explained that the reports from the IMEs and other evidentiary material "do not support granting an accidental disability retirement."  Rather, the board reasoned, the record established that "Trinidad is unable to work as a bus monitor because of subjective complaints without an actual diagnosis."  The board again provided an overview of the reporting doctors' findings based on the IMEs, and ultimately relied on the opinion of Dr. Weiss.  The board explained that "Dr. Weiss, the only orthopedic hand surgeon to examine Trinidad, found that Trinidad is not totally disabled and concluded that it was difficult to explain her significant subjective complaints from the innocuous incident on January 26, 2011."  Additionally, the board emphasized that "Dr. Weiss specifically noted there are certainly no objective signs of Chronic Regional Pain Syndrome Type I (RSD) from a physical exam perspective."  Basing its decision thereon, the board denied Trinidad's application for accidental-disability retirement benefits and instead granted Trinidad ordinary-disability benefits.  Trinidad

petitioned this Court for a writ of certiorari to review the board's decision, and we granted that petition.

Trinidad argues before this Court that each IME clearly establishes that she had a cognizable work-related injury that left her unable to perform her bus monitor duties. Furthermore, Trinidad maintains that her on-duty injury prevents her from returning to her work as a bus monitor and that she therefore qualifies for accidental-disability benefits, rather than ordinary-disability benefits, and should be compensated at the higher accidental-disability benefit rate. Trinidad proffers that the board erred in requiring that she be "totally disabled" to qualify for accidental-disability retirement benefits. Furthermore, Trinidad argues that the board over-relied on Dr. Weiss's opinion when, in fact, the board should have given his opinion little or no weight at all.[2]

The respondent asserts that the board based its decision on legally competent evidence that Trinidad's employment was not the natural and proximate cause of her disability. The respondent contends that each of the IMEs indicated confusion regarding Trinidad's medical history, "with one expert (Weiss) expressly denying that the [i]ncident caused her disability."[3]

## II

### Standard of Review

"This Court reviews decisions of the [retirement] board by a writ of certiorari." *Pierce v. Providence Retirement Board*, 15 A.3d 957, 961 (R.I. 2011); *see also* Article I, Rule 13(a) of the Supreme Court Rules of Appellate Procedure. "In so doing, 'our task is to discern whether any

---

[2] In her initial statement submitted pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure, Trinidad asserted an argument concerning a fourth IME; however, she subsequently withdrew that argument in later submissions to this Court.

[3] The respondent also argues that it remained unclear whether Trinidad had suffered a subsequent injury to her hand after the incident on January 26, 2011; however, there is no specific evidence of this in the record now before the Court.

- 5 -

legally competent evidence supports the lower tribunal's decision and whether the decision-maker committed any reversible errors of law in the matter under review.'" *Id.* (brackets omitted) (quoting *Sobanski v. Providence Employees' Retirement Board*, 981 A.2d 1021, 1022 (R.I. 2009) (mem.)). We have held that in our review for "'legally competent evidence' we look for 'some or any evidence supporting the agency's findings.'" *Id.* (quoting *Auto Body Association of Rhode Island v. State Department of Business Regulation*, 996 A.2d 91, 95 (R.I. 2010)). "When we evaluate questions of law, our review is *de novo*." *Id.* "If an error of law is found, it must 'so infect the validity of the proceedings as to warrant reversal.'" *Id.* (brackets omitted) (quoting *Cullen v. Town Council of Lincoln*, 850 A.2d 900, 903 (R.I. 2004)). "Accordingly, if the board did not lack competent facts supporting its decision and did not commit legal errors 'infecting the validity of the proceedings,' this Court will affirm its decision." *Id.* (brackets omitted) (quoting *Cullen*, 850 A.2d at 903).

### III

### Discussion

The respondent does not dispute that Trinidad is disabled; rather, the issue before this Court is whether the board relied upon legally competent evidence to deny Trinidad's application for accidental-disability retirement benefits and instead grant her ordinary-disability benefits. "The sole difference between accidental and ordinary benefits is the manner in which an employee becomes disabled, which accounts for the difference in compensation."[4] *Pierce*, 15 A.3d at 961 (quoting *Connelly v. City of Providence Retirement Board*, 601 A.2d 498, 500 (R.I. 1992)). Essentially, the retirement system provides benefits that are more lucrative to members

---

[4] "[A] recipient of ordinary-disability retirement receives a pension of no more than 45 percent of his [or her] final compensation, whereas the pension provided to a recipient of accidental disability retirement is equivalent to $66^{2}/_{3}$ percent of the member's final compensation." *Pierce v. Providence Retirement Board*, 15 A.3d 957, 961 (R.I. 2011).

disabled on the job than those disabled outside of work. *Id.* Accordingly, "entitlement to accidental-disability retirement's greater benefits requires a member to meet criteria that are more discriminating than the other * * * retirement options." *Id.* at 962.

This Court has explained that the clause, "the retirement board *shall* retire the said member for accidental disability," found in § 17-189(f) of the Providence Code of Ordinances, is "mandatory, not discretionary" in nature. *Prew v. Employee Retirement System of City of Providence*, 139 A.3d 556, 563 (R.I. 2016) (emphasis in original) (quoting *Connelly*, 601 A.2d at 500). "Consequently, this Court has declared that, once the employee has established that he or she qualifies for accidental-disability retirement, the board is not vested with discretion to deny the application." *Id.* at 563-64.

Section 17-189(f) details the requirements an employee must establish to qualify for accidental-disability retirement benefits.[5] *Prew*, 139 A.3d at 564. First, an employee is required to submit an application for accidental-disability retirement "within eighteen months of the accident or upon a waiver granted by the city council[,]" and then "must submit to medical examinations by three independent medical examiners selected and retained by the city." *Id.* This Court has enumerated the requirements of § 17-189(f) as follows:

> "The examinations, along with any additional investigation undertaken by the city's director of personnel, must establish the following: (1) the employee is physically or mentally incapacitated

---

[5] Since the board's vote on January 25, 2017, and its subsequent written decision on March 1, 2017, the Providence Code of Ordinances has been updated by two supplements. The first was issued on July 7, 2017, and the second was issued on April 10, 2018; however, the language of § 17-189(f) remains unchanged. We also note that the board incorrectly cited to § 17-189(6) rather than to § 17-189(f), the subsection in effect at the time of its decision. As we mentioned in *Prew*—where the board also miscited the statute—"the differences between the erroneously cited language and the actual law at the time the board issued its decision are not substantive for purposes of this case, [however,] these errors are troubling"; we urge the board to be more prudent in their decision writing. *Prew v. Employee Retirement System of City of Providence*, 139 A.3d 556, 560 n.3 (R.I. 2016).

for the performance of service * * *; (2) that the incapacitation is a natural and proximate result of an accident or accidents; (3) such accident or accidents occurred while the employee was in the performance of duty; (4) the disability was not caused by the employee's willful negligence or misconduct; (5) the disability is not the result of age or length of service; (6) the employee should be retired; and (7) the definite time, place, and conditions of the duty that resulted in the employee's disability." *Id.* (internal quotation marks, brackets, and footnotes omitted).

As detailed above, in addressing causality, Dr. Weiss explained in his report that he found "it difficult to explain the patient's significant subjective complaints and pain-based behavior given the fairly innocuous incident that she sustained as a bus monitor." Further, Dr. Weiss reported: "I'm not sure that I can causally relate the patient's current upper extremity complaints of pain to her actual on-the-job incident as opposed to some other conversion disorder or other psychiatric reactive phenomenon." As we explained in *Morse v. Employees Retirement System of City of Providence*, 139 A.3d 385 (R.I. 2016), there is no unanimity requirement in the ordinance governing the board's review of the IMEs submitted in connection with an application for benefits. *Morse*, 139 A.3d at 394. In *Morse*, we explained that "[i]f two independent medical examiners, plus the member's treating physicians, opine that the member is disabled, and one physician disagrees, it is certainly reasonable to conclude that the evidence is that the member is disabled." *Id.* at 393. However, we further clarified that "the board has the authority, indeed the obligation, to review the opinions of each of those physicians and determine why there is a disagreement." *Id.* We then stated that "[t]he board certainly has the ability to determine that the one dissenting physician is more persuasive than the others, but that decision must be based on a reasoned analysis of the evidence before the board." *Id.*

The board's decision in this case analyzed the opinions of Trinidad's treating physician and the three physicians who conducted IMEs pursuant to § 17-189(f). As noted, the board,

- 8 -

quoting § 17-189(f), concluded that "[t]he evidence provided does not establish that Trinidad is 'incapacitated for the performance of duty and * * * she shall be retired' pursuant to said ordinance." Further, the board stated that the record before it indicated that Trinidad "is unable to work as a bus monitor because of subjective complaints without an actual diagnosis." In reaching its conclusion, the board reasoned that "Dr. Austin * * * was unable to ascertain the cause of her pain and finally diagnosed her with chronic pain syndrome" and that "Dr. Reilly came to the same diagnosis of chronic pain syndrome." Moreover, the board acknowledged that Dr. Goldstein did state that the incident was the cause of Trinidad's disability but that he was unable to provide any diagnosis for Trinidad's symptoms. Dr. Goldstein also noted that it is difficult to assess the precise injury at the time of the incident. Lastly, the board emphasized Dr. Weiss's opinion, as "the only orthopedic hand surgeon to examine Trinidad," and highlighted Dr. Weiss's conclusion that Trinidad is not totally disabled, referring to his findings "that it was difficult to explain her significant subjective complaints from the innocuous incident[.]" The board reiterated that "Dr. Weiss specifically noted that there are certainly no objective signs" of chronic pain syndrome from a physical exam perspective. Accordingly, it is our opinion that Dr. Weiss's evaluation constituted legally competent evidence supporting the board's decision denying Trinidad accidental-disability retirement benefits.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the decision of the board.


**Justice Flaherty, dissenting.** I respectfully dissent from the holding of the majority in this case. I do so because I am convinced that the petitioner, Wanda Trinidad, has presented medical evidence that demands a conclusion that she is physically unable to perform her job as a

- 9 -

bus monitor and that her disability is the natural and probable result of the injury that she sustained while in the course of her duties on January 26, 2011. Therefore, it is my opinion that her application for accidental-disability retirement benefits should have been granted.

As the majority has articulately explained, petitioner was examined by three orthopedic surgeons of the board's choosing in connection with her application for accidental-disability retirement benefits. Each of those physicians knew of her medical history, including her mental health history, and each had the benefit of the reports of her treating physician, Gregory Austin, M.D., who is also an orthopedic surgeon. Each of the doctors performed an independent medical examination at the behest of the board, and each was aware that Dr. Austin had begun his treatment with conservative therapy, but that lack of progress had caused Dr. Austin eventually to perform two surgeries on petitioner's left wrist.

The first of these independent medical examiners was Philip J. Reilly, M.D., who examined petitioner on April 19, 2016. Doctor Reilly reported that petitioner had been injured in the course of her employment and had tried, without success, to return to work. Doctor Reilly's physical examination revealed the presence of fluid in petitioner's hand and wrist. He also opined that there were objective signs that her chronic pain syndrome was causally connected to the injury that she sustained while in the course of her duties. Significantly, Dr. Reilly was of the "opinion to within a reasonable degree of medical certainty that the patient has a permanent disability with regard to being employed as a bus monitor." It was further his "opinion within a reasonable degree of medical certainty that this disability is causally related to the January 26, 2011 accident."

Jack D. Goldstein, M.D., another orthopedic surgeon, examined petitioner on behalf of the board on April 28, 2016. Doctor Goldstein also recounted petitioner's medical and surgical

history. His examination revealed a limited range of motion of petitioner's left wrist and, after examining her, he was of the opinion that it was not likely that she would improve to the extent that she could return to work. Indeed, Dr. Goldstein said, in no uncertain terms, that "[c]learly her injury as stated is the initial and only cause of her current disability. I feel that she is currently disabled from her previous job and this was entirely caused by the accident as described although it is difficult to assess what exactly was injured at the time of injury." Doctor Goldstein concluded by saying that it was unlikely that she would be able to return to her former job and that she should be retrained for some light duty occupation. His opinions were also set forth to a reasonable degree of medical certainty.

Finally, petitioner was examined by Arnold-Peter C. Weiss, M.D., on April 14, 2016. Although Dr. Weiss said that he was unable to connect petitioner's current complaint of pain to petitioner's on-the-job incident, a review of Dr. Weiss's report can lead to no conclusion other than that it lacks the clarity and definitiveness of the reports of the other examining physicians. For instance, Dr. Weiss refers to petitioner's injury as arising from a "fairly innocuous incident[,]" but in the very next sentence relates that she underwent "some significant surgery[.]" Moreover, far from rendering an opinion based on a reasonable degree of medical certainty, as the other two independent medical examiners had done, Dr. Weiss simply states that "I'm not sure that I can causally relate the patient's current upper extremity complaints of pain to her actual on-the-job incident[.]" He then suggests that perhaps the cause is "some other conversion disorder or other psychiatric reactive phenomenon."

Doctor Weiss's conclusions were, at best, equivocal. On the one hand, he reports that "from an objective examination perspective I do not believe this patient is totally disabled[,]"

- 11 -

even though total disability is not the standard that is required.[1] But, on the other hand, he opines that "[f]rom a subjective complaint, and the significant symptoms she's had, including her anxiety disorder, she may be disabled." Despite his misgivings over Ms. Trinidad's claimed inability to work, he nonetheless restricted her from lifting any weight in excess of five pounds with her left upper extremity.[2]

It is significant to me that the board chose to rely solely on the opinion of Dr. Weiss, the only examiner who did not unequivocally believe that the petitioner's disability was not work-related. The board held that it gave more weight to Dr. Weiss's opinion because he was a hand specialist, but it cannot escape mention that it was the board and the board alone who chose the examiners.

The majority has concisely, and quite correctly, set forth the appropriate standard of review, and it cannot be gainsaid that that standard is daunting. The majority has also correctly and accurately cited this Court's decision in *Morse v. Employees Retirement System of City of Providence*, 139 A.3d 385 (R.I. 2016). In *Morse*, this Court rejected the board's unofficial "unanimity rule" and held that there was no requirement that the physicians conducting independent medical examinations be unanimous in their opinions and findings of disability. *See Morse*, 139 A.3d at 393-94. It is also true that, in rejecting the board's unanimity rule, we opined that the board might be free to conclude that a single dissenting doctor's opinion was more persuasive than the conclusions reached by the other medical examiners. *Id.* at 393. We

---

[1] At oral argument, counsel for the board conceded that the appropriate standard does not include a requirement that the applicant be totally disabled.

[2] All the examining physicians reported that petitioner had a preexisting history of anxiety, depression, and panic attacks. Doctors Reilly and Goldstein, as orthopedic surgeons, declined to comment on what impact these prior conditions may have had on Ms. Trinidad's recovery or progress. On the other hand, Dr. Weiss, also an orthopedic surgeon, took the liberty of expressing an opinion about her psychiatric condition—an opinion that was indisputably outside the realm of his expertise.

cautioned, however, that such a conclusion "must be based on a reasoned analysis of the evidence before the board." *Id.*

It is here that I find fault with the decision of the board and the reasoning of the majority. There can be no question that the pension system of the City of Providence, like the pension systems of so many other municipalities and states, is stressed and seriously underfunded. It is certainly laudable that the board has sought to endeavor to limit some of the generous disability findings that have resulted in pension abuse in the past. Nonetheless, this petitioner's case deserves to be assessed on its own merits, and it is apparent to me that the board has overlooked the great weight of the evidence and has failed to reasonably analyze the evidence before it in order to reach a decision denying Ms. Trinidad an accidental-disability pension. *Morse*, far from enabling such an action, in fact cautions against it.

It cannot escape notice that the board has seized on our decision in *Morse* to reach the decision that it has made in this case. In *Morse*, the board argued that the mere presence of a medical examiner's dissenting opinion was sufficient to deny disability benefits because the board construed the ordinance to require that the examiners be unanimous. *See Morse*, 139 A.3d at 386. In reversing the board, this Court rejected such a narrow construction. Now, the board argues that it need not credit the majority opinion if a dissenter believes there *might* not be a disability. In its post-*Morse* epiphany, the board urges that two strong majority opinions should be ignored while an internally contradictory and diffuse opinion should carry the day.[3] It is my

_____

[3] Actually, the record reveals that the board requested that petitioner be examined by a psychiatrist, Ronald Stewart, M.D. Even though Dr. Stewart acknowledged Ms. Trinidad's past mental health issues, and even though he opined that her injury, surgery, and treatment had more than likely exacerbated her prior condition, he saw no reason to conclude anything but that the injury on the school bus was the cause of her disability. Further, Dr. Stewart opined that, when her mental health issues were under control, petitioner would be able to perform light work that

- 13 -

opinion that the majority's decision here sets our holding in *Morse* on its head and allows, and perhaps encourages, the board to find one doctor who will determine that an applicant is not disabled and then cling to that opinion to deny the application in the face of other multiple, unequivocal opinions to the contrary.

Finally, it is my opinion that the majority has also overlooked our holding in *Prew v. Employee Retirement System of City of Providence*, 139 A.3d 556 (R.I. 2016), in which we held firmly that ordinances such as the one at issue here are remedial in nature, and that any ambiguities should be construed liberally so that the purpose of the ordinance might be carried out. *See Prew*, 139 A.3d at 563. Such ordinances are designed to provide a more generous pension benefit to those employees who are injured in the course of their employment and are unable to return to their jobs because of disability. *See id.* Therefore, any ambiguities must be construed liberally, and in favor of the employee. *See id.* It is my opinion that the board has done, and the majority has affirmed, just the opposite here.

For all those reasons, I respectfully dissent from the opinion of the majority in this case.

---

did not involve the use of her left hand. The board did not cite or even refer to Dr. Stewart's report in its decision.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## ORDER COVER SHEET

| | | |
|---|---|---|
| **Title of Case** | Wanda I. Trinidad v. Employees' Retirement System of Providence. | |
| **Case Number** | No. 2017-113-M.P. | |
| **Date Order Filed** | May 2, 2019 | |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. | |
| **Source of Appeal** | Retirement Board of the Employees' Retirement System of Providence | |
| **Judicial Officer From Lower Court** | N/A | |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Stephen M. Rappoport, Esq.<br>Michael J. Farley, Esq. | |
| | For Respondent:<br><br>Etie-Lee Schaub, Esq.<br>Kenneth B. Chiavarini, Esq. | |