February 5, 2021

Jared Starnino              :

            v.              :

Employees' Retirement System of    :
      the City of Providence.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Jared Starnino :

v. :

Employees' Retirement System of :
  the City of Providence.

Present:  Suttell, C.J., Flaherty, and Robinson, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**   On August 14, 2018, Jared Starnino petitioned this Court for the issuance of a writ of certiorari to review a July 25, 2018 decision of the Retirement Board of the Employees' Retirement System of the City of Providence (the Board) denying his application for an accidental disability retirement.  This Court granted his petition on April 29, 2019.  He contends before this Court that, "[e]ven the most deferential review reveals that the Board virtually ignored and failed to reason over the legally competent evidence before it" when it denied his application for an accidental disability retirement.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this case should not be

summarily decided. After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this case may be decided at this time.

For the reasons set forth in this opinion, we affirm the decision of the Board.

**I**

**Facts and Travel**

The facts forming the basis of this case are not a subject of debate between the parties. In relating those facts, we rely on the decision of the Board as well as other documents in the record.

At all times relevant to this case, Mr. Starnino was a firefighter with the City of Providence. On June 24, 2014, in carrying out his work-related duties, Mr. Starnino injured his right shoulder while lifting a patient. After he had recovered from that injury, he eventually returned to full duty. Then, on August 3, 2015, he sustained a second injury to his right shoulder while transferring a patient from a stretcher. According to the Board's decision, on November 12, 2015, Mr. Starnino's treating physician, Jonathan Gastel, M.D., performed a "right shoulder arthroscopy with SLAP repair and anterior capsulorrhaphy as well as repair of partial thickness rotator cuff tear." Ultimately, however, on September 28, 2016, a Functional Capacity Evaluation (FCE) was performed at the request of Dr. Gastel; that evaluation concluded that Mr. Starnino could not return to working full duty.

Accordingly, on January 8, 2017, Mr. Starnino submitted an application for an accidental disability retirement on the basis of his continuing shoulder injury.

Subsequent to filing his application for an accidental disability retirement, Mr. Starnino underwent three independent medical examinations, as required by the applicable ordinance.

On May 30, 2017, Mr. Starnino underwent an examination conducted by A. Louis Mariorenzi, M.D. Doctor Mariorenzi produced a report, dated June 5, 2017, in which he concluded, to a reasonable degree of medical certainty, that "because of the restricted motion to the shoulder," Mr. Starnino would "have difficulty returning to all duties as a firefighter." He added that Mr. Starnino was not totally disabled from any "gainful employment" but was "partially disabled, unable to return to his employment as a firefighter." He then stated the following: "[B]ased upon his present physical findings and the medical records available to me, there is a probability that with routine everyday use of this arm that motion will continue to improve and may within the next 2 years return to normal which would then allow this individual to return to his usual employment as a firefighter." It was Dr. Mariorenzi's recommendation that Mr. Starnino be considered partially disabled and be reevaluated in two years.

On the "Accidental Disability Questionnaire" filled out by Dr. Mariorenzi, he opined that Mr. Starnino's incapacity was the natural and proximate result of his injury sustained while performing his duties as a firefighter.

On June 26, 2017, Mr. Starnino underwent an examination by Michael P. Bradley, M.D. Doctor Bradley opined, in a report dated September 5, 2017, that, without further surgery, Mr. Starnino "ha[d] really undergone a maximal medical improvement." He stated that "under his current course of treatment, I do not think he could continue working based on the job description provided for him as a rescue technician for the Providence Fire Department." Doctor Bradley also noted that he had reviewed the FCE and that it was "quite detailed in nature * * *." Additionally, he stated that Mr. Starnino's right arm was "certainly less functional than normal." He then concluded that, "[u]nless further surgery is considered," Mr. Starnino "should be referred for his Accidental Disability Retirement * * *."

On the "Accidental Disability Questionnaire" filled out by Dr. Bradley, he stated that, to a "medical degree of certainty," without further surgery, Mr. Starnino would not be able to return to his job and that, at that time, his disability was permanent. He further opined therein that Mr. Starnino's incapacity was the natural and proximate result of his injury sustained while performing his duties as a firefighter.

On August 15, 2017, Mr. Starnino underwent a medical examination conducted by Joseph T. Lifrak, M.D. Doctor Lifrak produced a report based on that examination, and he specifically stated that his report was given to a reasonable degree of medical certainty. Doctor Lifrak opined that Mr. Starnino had "subjective complaints, although no objective findings on MRI arthrogram of any pathology as well as only mild restrictions in range of motion * * *." He then stated that Mr. Starnino could "work full duty as a firefighter without being injurious to his health * * *." Doctor Lifrak then added the following statement:

> "[H]owever, functional capacity evaluation done in September 2016, states that he does not meet the criteria and guidelines to meet full duty requirements. Therefore although I feel he can work full duty, the functional capacity evaluation is contrary to this and based on the functional capacity evaluation, [Mr. Starnino] cannot work full duty without being injurious to his health. * * * Based on the functional capacity evaluation, [Mr. Starnino] would have the restrictions as outlined * * * in the functional capacity evaluation report."

On the "Accidental Disability Questionnaire" filled out by Dr. Lifrak, he opined that Mr. Starnino's disability was permanent and was the natural and proximate result of his injury sustained while performing his duties as a firefighter.

In a February 13, 2017 letter to Mr. Starnino's counsel, Mr. Starnino's treating physician, Dr. Gastel, opined that Mr. Starnino was "at a point of Maximal Medical Improvement" without further surgery. He added that Mr. Starnino was "incapacitated from full performance of his duties as a fire fighter/emergency

- 5 -

technician." Doctor Gastel explained that he had relied on the FCE in part in reaching his conclusion, and he stated that an FCE report was a report that would be "reasonably relied upon, * * * in [his] opinion." He also stated that his opinions were based on his "highest degree of medical certainty."

Mr. Starnino's application for an accidental disability retirement came before the Board for the first time on January 24, 2018. In the course of that hearing, Mr. Starnino was asked if he had ever had a prior right shoulder injury, to which he responded: "[M]aybe in college" "thirteen, fourteen years ago." The matter was continued so that the Board might attempt to obtain some additional information. Mr. Starnino's application was then further considered by the Board on April 25, 2018, at which time the Board voted to deny his application.

On July 25, 2018, the Board issued a written decision. The Board's decision included findings of fact, which detailed the evaluations of Mr. Starnino conducted by all three independent medical examiners. It then set forth the entirety of the applicable ordinance—§ 17-189(f)[1] of the Providence Code of Ordinances—before deciding that "[t]he legally competent evidence provided does not establish that

---

[1]    We continue, as we did in *Prew v. Employee Retirement System of City of Providence*, 139 A.3d 556 (R.I. 2016), and *Trinidad v. Employees' Retirement System of Providence*, 206 A.3d 700 (R.I. 2019), to refer to this ordinance section as § 17-189(f) rather than § 17-189(6). There is no substantive difference between the two. For a more detailed discussion of this citation issue, we refer the interested reader to this Court's opinions in *Prew*, 139 A.3d at 560 n.3, and *Trinidad*, 206 A.3d at 705 n.5.

[Mr.] Starnino is 'incapacitated for the performance of duty and ought to be retired' pursuant to [the] ordinance." The decision went on to state that the record showed that Mr. Starnino was "incapacitated as a Firefighter because of subjective complaints without objective findings." It then relied specifically on Dr. Lifrak's conclusion that Mr. Starnino could perform full duty work as a firefighter; it further relied upon Dr. Lifrak's comments with respect to Mr. Starnino's complaints being subjective, without objective findings; and it also referenced Dr. Lifrak's mention of the mild restrictions to Mr. Starnino's range of motion. The Board "discounted the functional capacity evaluation because it was performed almost two years prior in 2016." Finally, the Board noted that "Mr. Starnino testified that he originally injured his right shoulder in college but was unable to provide the Board with any information as to medical records or treatment for said injury." For these reasons, the Board denied Mr. Starnino's application for an accidental disability retirement.

On August 14, 2018, Mr. Starnino petitioned this Court for the issuance of a writ of certiorari to review the Board's decision. This Court granted his petition on April 29, 2019.

## II

### Standard of Review

Decisions of the Board are reviewed by this Court pursuant to the issuance of a writ of certiorari. *See* Rule 13(a) of Article I of the Supreme Court Rules of

Appellate Procedure. In reviewing the decision of the Board pursuant to a writ of certiorari, "our task is to discern whether any legally competent evidence supports the lower tribunal's decision and whether the decision-maker committed any reversible errors of law in the matter under review." *Trinidad v. Employees' Retirement System of Providence*, 206 A.3d 700, 704 (R.I. 2019) (internal quotation marks omitted). We have stated that it is our duty to "scrutinize the record to determine whether the board's decision is supported by any legally competent evidence * * *." *Prew v. Employee Retirement System of City of Providence*, 139 A.3d 556, 559 (R.I. 2016) (internal quotation marks omitted). We have further consistently held that "in our review for legally competent evidence we look for some or any evidence supporting the agency's findings." *Trinidad*, 206 A.3d at 704 (internal quotation marks omitted); *see Morse v. Employees Retirement System of City of Providence*, 139 A.3d 385, 390-91 (R.I. 2016); *Pierce v. Providence Retirement Board*, 15 A.3d 957, 961 (R.I. 2011); *Auto Body Association of Rhode Island v. State Department of Business Regulation*, 996 A.2d 91, 95 (R.I. 2010); *see also Foster-Glocester Regional School Committee v. Board of Review*, 854 A.2d 1008, 1012 (R.I. 2004) ("Legally competent evidence is defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion,

and means an amount more than a scintilla but less than a preponderance.") (internal quotation marks omitted).

We review questions of law *de novo*, and we have stated that "[i]f an error of law is found, it must so infect the validity of the proceedings as to warrant reversal." *Trinidad*, 206 A.3d at 704 (internal quotation marks omitted); *see also Morse*, 139 A.3d at 391. As such, "if the board did not lack competent facts supporting its decision and did not commit legal errors infecting the validity of the proceedings, this Court will affirm its decision." *Trinidad*, 206 A.3d at 704 (internal quotation marks omitted).

## III

## Analysis

Mr. Starnino represents to this Court that "*all* physicians unanimously agreed that petitioner was incapable of performing his full duties as a result of his on-the-job injury * * *." (Emphasis in original.) He further posits that the Board improperly neglected to explain why it discounted the FCE report and that the FCE was not "almost two years old" but rather was only approximately sixteen months old at the time of the first hearing before the Board in January of 2018. He further contends that the Board either should have found as a fact that Mr. Starnino was at a "medical end point" or should have explained how the Board could conclude that he was not. He adds that, "[i]f the Board found [Mr.] Starnino to be at [Maximum

Medical Improvement] as it should have on this record, there would be no reason to 'discount' the results of the FCE, because the evidence shows [Mr.] Starnino's medical condition was not likely to improve * * *." Lastly, Mr. Starnino argues that the Board mentioned his previous injury that he told the Board may have taken place when he was in college but "noticeably absent is any meaningful discussion of the significance, if any, of this 13 year old incident * * *." He avers that the "Board * * * shoveled aside the legally competent evidence to look for straws it might grasp to reach [its] desired result * * *."[2]

Thus, the question presented to this Court is whether or not legally competent evidence existed to support the Board's denial of Mr. Starnino's application for an accidental disability retirement.

There are three different avenues to receive retirement benefits from the City of Providence: a service retirement, an ordinary disability retirement, and an accidental disability retirement. *Morse*, 139 A.3d at 391. "The sole difference between accidental and ordinary benefits is the manner in which an employee becomes disabled, which accounts for the difference in compensation." *Trinidad*, 206 A.3d at 704-05 (internal quotation marks omitted). The retirement system

---

[2] Mr. Starnino focuses much of his argument before this Court on Dr. Mariorenzi's opinion that there was a probability that his shoulder injury would improve in two years. However, the Board did not rely on that statement by Dr. Mariorenzi in its written decision, nor do we rely on that statement in reaching our decision to affirm.

provides greater benefits to those injured on the job in the form of the accidental disability retirement. *Id.* at 705. As such, "entitlement to accidental-disability retirement's greater benefits requires a member to meet criteria that are more discriminating than the other * * * retirement options." *Id.* (internal quotation marks omitted). Section 17-189(f) details the requirements for an accidental disability retirement, including the timeline for filing an application and the requirement that the applicant submit to three independent medical examinations. We have summarized the requirements of the ordinance as follows:

> "The examinations, along with any additional investigation undertaken by the city's director of personnel, must establish the following: (1) the employee is physically or mentally incapacitated for the performance of service any [*sic*]; * * * (2) that the incapacitation is a natural and proximate result of an accident or accidents; * * * (3) such accident or accidents occurred while [the employee was] in the performance of duty; (4) the disability was not caused by the employee's willful negligence or misconduct; (5) the disability is not the result of age or length of service; (6) the employee should be retired; and (7) the definite time, place, and conditions of the duty that resulted in the employee's disability." *Prew*, 139 A.3d at 564 (internal quotation marks omitted).

Section 17-189(f) states that, once the Board determines that an applicant is disabled, then the Board "shall retire the said member * * *." We have held that that clause is "mandatory, not discretionary in nature," meaning that "once the employee has established that he or she qualifies for accidental-disability retirement, the board is

- 11 -

not vested with discretion to deny the application." *Trinidad*, 206 A.3d at 705 (internal quotation marks omitted).

In this Court's opinion in *Morse*, 139 A.3d at 385, in the course of holding that § 17-189(f) does not require unanimity of the three independent medical examiners, we made the following statement which is pertinent to the instant case:

> "If two independent medical examiners, plus the member's treating physicians, opine that the member is disabled, and one physician disagrees, it is certainly reasonable to conclude that the evidence is that the member is disabled. Of course, the board has the authority, indeed the obligation, to review the opinions of each of those physicians and determine why there is a disagreement. *The board certainly has the ability to determine that the one dissenting physician is more persuasive than the others, but that decision must be based on a reasoned analysis of the evidence before the board*."
> *Morse*, 139 A.3d at 393 (emphasis added).

Thus, we have been clear that the Board may rely on the evaluation of one independent medical examiner so long as its decision is based on a reasoned analysis of the evidence. In the opinion of this Court, after a thorough review of the record and the arguments of the parties before this Court, that is precisely what the Board did in the instant case. The Board made findings of fact, including specifically discussing each of the independent medical examinations undergone by Mr. Starnino. It then quoted from the applicable ordinance before concluding that legally competent evidence did not establish that Mr. Starnino was incapacitated from the performance of his duty and that he should be retired as required by the ordinance.

- 12 -

The Board proceeded to rely heavily on the evaluation of Dr. Lifrak, in which he opined that he thought Mr. Starnino could work full duty, even though the FCE report had reached a contrary conclusion. It is true that Dr. Lifrak noted that the FCE found to the contrary and that, therefore, Mr. Starnino was incapacitated. However, the Board was within its discretion to choose to discount the FCE, especially in view of the length of time that had passed since that evaluation had been performed, and to give more credence to Dr. Lifrak's opinion as to whether or not Mr. Starnino could return to full duty and as to the subjective nature of Mr. Starnino's complaints. It is certainly not the case, as Mr. Starnino would have us believe, that *all* of the independent medical examiners in this case found that he was incapacitated; rather, our review of the record discloses that the views of the three independent medical examiners and Dr. Gastel were substantially more divergent from one another.

What is more, our standard of review provides that we need look only for *some or any evidence* to support the Board's decision. *See Trinidad*, 206 A.3d at 704; *see also Foster-Glocester Regional School Committee*, 854 A.2d at 1012 ("Legally competent evidence is defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.") (internal quotation marks omitted). Certainly, Dr. Lifrak's statement that he thought Mr. Starnino could return to full

duty constitutes *some evidence* in support of the Board's decision. As such, we need

go no further—we will not disturb the Board's decision. *See Trinidad*, 206 A.3d at

704; *see also Harodite Industries, Inc. v. Warren Electric Corp.*, 24 A.3d 514, 533

(R.I. 2011) ("The issue * * * is *not* what ruling a member of this Court might have

made if he or she were confronted with the motion [at issue] at the trial court level[;]

[t]he only issue properly before us is whether the hearing justice abused her

discretion in ruling as she did * * *.") (emphasis in original); *State v. Gillespie*, 960

A.2d 969, 980 (R.I. 2008) ("[W]e may uphold a trial justice's ruling even if we

would have ruled differently had we been in the trial justice's position.").

Lastly, we note that, in our view, this case has substantial similarities to what

was at issue in the recent case of *Trinidad v. Employees' Retirement System of

Providence*, 206 A.3d 700 (R.I. 2019). In that case, the Board relied upon the

conclusion of one of the independent medical examiners—Dr. Arnold-Peter C.

Weiss—in determining that the applicant in that case was not entitled to an

accidental disability retirement, despite the fact that the reports of the other two

independent medical examiners seemed to weigh in the opposite direction. *Trinidad*,

206 A.3d at 702-06. We held that "Dr. Weiss's evaluation constituted legally

competent evidence supporting the board's decision denying Trinidad accidental-

disability retirement benefits." *Id.* at 706. Thus, in *Trinidad*, we looked to the

existence of *any* legally competent evidence to support the Board's decision and

- 14 -

affirmed because some such evidence was present in the record; that is precisely the scenario with which we are currently confronted, and our holding in this case is entirely consistent with our holding in *Trinidad*. *Id.* at 705-06.

Accordingly, in our judgment, the Board relied on legally competent evidence, namely the evaluation of Mr. Starnino conducted by Dr. Lifrak, in reaching its conclusion that Mr. Starnino was not entitled to an accidental disability retirement. As such, we affirm the Board's decision. *See id.* at 704.

## IV

## Conclusion

Accordingly, we affirm the decision of the Board. We remand the record to that tribunal.

Justice Goldberg, Justice Lynch Prata, and Justice Long did not participate. Justice Flaherty participated in the decision but retired prior to its publication.

**Justice Flaherty, dissenting.** I respectfully dissent from the holding of the majority in this case. I do so because I am convinced that the petitioner, Jared Starnino, has presented medical evidence that demands a conclusion that, some two years after he was injured, he remained physically unable to perform his job as a firefighter and that his disability was the natural and probable result of the injury

- 15 -

that he sustained during the course of his duties on August 3, 2015.  It is my further opinion that, conversely, there was no competent evidence to the contrary.  Thus, I conclude that the decision of the board should be quashed.

As the majority has explained, petitioner was examined by three orthopedic surgeons of the board's choosing in connection with his application for accidental-disability retirement benefits.  Each of the doctors performed an independent medical examination at the behest of the board, and each was aware that Mr. Starnino had begun his treatment with physical therapy, but that lack of progress eventually had caused his treating physician, Jonathan A. Gastel, M.D., to perform surgery in the form of an arthroscopy with SLAP tear repair, a partial thickness rotator cuff tear repair, and an anterior capsulorrhaphy on petitioner's right shoulder.

The first of those independent medical examiners was A. Louis Mariorenzi, M.D., who examined petitioner on May 30, 2017.  Doctor Mariorenzi opined in his IME report that "[petitioner] is partially disabled, unable to return to his employment as a firefighter." It was Dr. Mariorenzi's recommendation that Mr. Starnino be considered to be partially disabled.

The next independent medical examiner was Michael P. Bradley, M.D., who examined petitioner on June 26, 2017.  Doctor Bradley opined that "without further surgery" petitioner had "reached maximum medical improvement" and that, "under his current course of treatment," the examiner did "not think he could continue"

working as a firefighter "[u]nless further surgery is considered[.]" Doctor Bradley further indicated on the questionnaire attached to his report that petitioner was physically incapacitated from the performance of his employment duties, and he stated to a "medical degree of certainty that without further surgery he would not be able to return to his job and current duty requirements as a rescue technician."[1]

Joseph T. Lifrak, M.D., a third orthopedic surgeon, examined petitioner on behalf of the board on August 15, 2017. Although Dr. Lifrak felt personally that petitioner "can work full duty, the functional capacity evaluation is contrary to this and based on the functional capacity evaluation, the patient cannot work full duty without being injurious to his health." Doctor Lifrak stated his opinions to a reasonable degree of medical certainty. However, in the face of three opinions by the three doctors chosen by the board, asserting that petitioner was disabled and could no longer perform his job as a firefighter, the board nonetheless denied his accidental-disability retirement pension.

The majority has concisely, and correctly, set forth the appropriate standard of review, and it cannot be argued that that standard is daunting. The majority has also correctly and accurately cited this Court's decision in *Morse v. Employees Retirement System of City of Providence*, 139 A.3d 385 (R.I. 2016). In *Morse*, we

---

[1] When he testified before the board in support of his application, petitioner said that he declined further surgery because his treating physician had informed him that additional surgery could make his condition worse.

- 17 -

rejected the pension board's unofficial "unanimity rule" and held that there was no requirement that the physicians conducting independent medical examinations be unanimous in their opinions and findings of disability. *See Morse*, 139 A.3d at 393-94. It is also true that, in rejecting the board's unanimity rule, we opined that the board might be free to conclude that a single dissenting doctor's opinion was more persuasive than the conclusions reached by the other medical examiners. *Id.* at 393. We cautioned, however, that such a conclusion "must be based on a reasoned analysis of the evidence before the board." *Id.*

It is here that I find fault with the decision of the board and depart from the reasoning of the majority. First, it troubles me greatly that the hearing transcript reveals that the board seemed determined to find a way to deny petitioner's accidental-disability retirement pension instead of impartially weighing the evidence before it.[2] "When an administrative agency carries out a quasi-judicial function, it

---

[2] For instance, the board members remarked during the hearing:

> "CHAIRMAN * * *: And Doctor, whatever documents you need, if you could try to find the needle in the haystack with this.
>
> "* * *
>
> "[BOARD MEMBER]: I—I personally believe and—and it kills me to say this because he's one of our—our members, but I—I think he's gaming the system and I think that we have evidence here to—to deny."

- 18 -

has an obligation of impartiality on par with that of judges." *Champlin's Realty Associates v. Tikoian*, 989 A.2d 427, 443 (R.I. 2010). Under the Fourteenth Amendment to the United States Constitution, "administrative tribunals must not be 'biased or otherwise indisposed from rendering a fair and impartial decision.'" *Id.* (quoting *Davis v. Wood*, 444 A.2d 190, 192 (R.I. 1982)). Several comments made by board members on the record can lead to no other conclusion but that the board was hostile to petitioner's claim for accidental-disability retirement benefits and that the board members were looking for evidence that would support their intuition that he was "gaming" the system.[3]

---

[3] Further comments made by board members during the hearing included:

> "CHAIRMAN * * *: So, let me just say what my thoughts are and then we can do whatever you want to do. Right off the bat and he's evasive? I—I—I would tend to lean towards Doctor Mariorenzi. Doctor Lifrak, in the sense that something's not right here, if I can say it that way. * * *
>
> "[BOARD MEMBER]: I'm—I was just curious—because, you know, he was a cop for a year, that's—that's pretty physical. * * * You know, you could chase somebody and tackle them. We have no records of that. You know, maybe at that particular time, if he did anything like that, he may not have felt anything, but it could have been brought on later. * * *
>
> "CHAIRMAN * * *: Right and I'm wondering if there's an MRI from before he got injured somewhere out there. I mean—I know, like I said, that needle in a haystack[.]"

Other than petitioner's statement that he was unable to recall the name of the walk-in emergency room he had visited thirteen or fourteen years earlier to treat an injury he had received playing basketball while he was in college, there was utterly no evidence that petitioner had kept any information from the board. In addition, he stated unequivocally that his treatment for that injury consisted of an examination and advice that he take aspirin or ibuprofen until his pain subsided. Moreover, it cannot be gainsaid that petitioner was subjected to a thorough physical examination before he was appointed to the Cranston Police Department and then to the Providence Fire Department. He also successfully completed a physically rigorous police academy and then an equally demanding fire academy without difficulty, and it is undisputed that he worked for several years as an emergency medical technician (EMT) without incident or evidence of injury.

In its decision, the board dwelled on the fact that the examining physicians did not say exactly the same thing. That is true and is to be expected. However, there was no dispute among them that petitioner's injury arose during the course of his employment and that he was, at the time of each examination, unable to perform the duties of a firefighter.

In rationalizing the denial of petitioner's application, the board and the majority focus with particularity on the reports of Dr. Lifrak and Dr. Mariorenzi. Doctor Lifrak's report is admittedly a bit confusing. Although he had no difficultly

in connecting petitioner's injury to a work incident, he found subjective complaints only and opined that petitioner could return to work as a firefighter. However, when noting the very specific results of the functional capacity evaluation (FCE), especially as those findings related to the precise duties of a firefighter, he reversed course and said that, to a reasonable degree of medical certainty, "the functional capacity evaluation is contrary to this and based on the functional capacity evaluation, the patient cannot work full duty without being injurious to his health. * * * Based on the functional capacity evaluation, the patient would have the restrictions as outlined above in the functional capacity evaluation report."

My reading of Dr. Lifrak's report leads me to the inevitable conclusion that the examining physician determined that the FCE report's focused testing relating to the everyday duties of an EMT caused him to adjust his personal opinions, given the exquisite detail in the FCE, and resulted in his adopting the restrictions set forth in that report. Thus, his conclusion was that petitioner was not able to perform the work of an EMT.

In my opinion, the equivocation in Dr. Lifrak's report should have spurred the board, at the very least, to seek a clarification from Dr. Lifrak. Instead, the board seems to have treated the correspondence from the physician as two reports: one personal in nature that found no disability and one based upon the FCE concluding that there was disability. The board then disregarded that part of Dr. Lifrak's report

that it found to be advantageous to the application. Indeed, the transcript of the board's executive session on January 24, 2018, reveals an intention to seek clarification, but the board ultimately did not do so.

Finally, I am troubled by the report of the third examining physician, Dr. Mariorenzi. Doctor Mariorenzi found petitioner to be cooperative and he also made a finding that there was "some restricted motion to his right shoulder." Doctor Mariorenzi opined that, due to the restricted motion in his shoulder, petitioner was unable to return to his duties as a firefighter. However, the doctor then said that, based upon the medical records and his condition, petitioner probably would be able to return to his duties within the next two years.

Placing aside the undeniably speculative nature of such a statement, it is my opinion that the board's consideration of Dr. Mariorenzi's discussion as to petitioner's future condition was inappropriate and in error.

The retirement ordinance, Section 17-189(f) of the Providence Code of Ordinances, states clearly that, once the board determines that an applicant is disabled, the board "shall retire the said member[.]" Thus, the ordinance does not provide the elasticity to consider what the condition of an applicant might be at some future point. The board must make its decision solely on the evidence when it

considers the application. We have said that such action by the board is mandatory.[4]

*See Trinidad v. Employees' Retirement System of Providence*, 206 A.3d 700, 705 (R.I. 2019) (concluding that once an "employee has established that he or she qualifies for accidental-disability retirement, the board is not vested with discretion to deny the application") (quoting *Prew v. Employee Retirement System of City of Providence*, 139 A.3d 556, 563-64 (R.I. 2016)).

Finally, it is my opinion that the board undercut petitioner's disability retirement claim by referring to an injury that petitioner received while he was in college more than a decade before he sustained the undeniably work-related injury to his shoulder. The ordinance provides no room for such an exclusion. The ordinance says that an injury may be discounted only if it is "the result of willful negligence or misconduct on the part of said member[.]" No such evidence was presented to the board. To the contrary, all the physicians who examined petitioner agreed that he had suffered a disabling injury that occurred during the course of his duties.

In my dissent in *Trinidad*, cited *supra*, I expressed my appreciation for the efforts of the retirement board to rein in some of the more generous, if not abusive, pension decisions of the past. At the same time, however, it was my opinion in that

---

[4] In its decision, the board said that it discounted the FCE because it was nearly two years old. However, the FCE was performed on September 28, 2016, and Dr. Lifrak's exam was performed less than a year later, on August 5, 2017.

case, as it is here, that each applicant has the right to have his or her particular application weighed on its individual merits, consistent with the strict requirements of the ordinance. *Trinidad*, 206 A.3d at 708. Thus, the board should not be looking for a "needle in the haystack" as it considers whether an application has merit.[5]

Therefore, I respectfully dissent from the holding of the majority in this case and would remand this case to the board to seek clarification from Dr. Lifrak with respect to the ambiguities in his report as to whether or not it is his opinion, after considering the FCE, that the petitioner was disabled as a result of a work-related injury at the time of his examination.

---

[5] In *Prew v. Employee Retirement System of City of Providence*, 139 A.3d 556 (R.I. 2016), we held firmly that ordinances like the one at issue here, are remedial in nature and that any ambiguities should be construed liberally and in favor of the employee so that the purpose of the ordinance might be carried out. *See Prew*, 139 A.3d at 563. Such ordinances are designed to provide a more generous pension benefit to those employees who are injured in the course of their employment and are unable to return to their jobs because of disability. *See id.*


## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Jared Starnino v. Employees' Retirement System of the City of Providence. |
| **Case Number** | No. 2018-233-M.P. |
| **Date Opinion Filed** | February 5, 2021 |
| **Justices** | Suttell, C.J., Flaherty, and Robinson, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Retirement Board of the Employee Retirement System of the City of Providence |
| **Judicial Officer from Lower Court** | N/A |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Angelo R. Simone, Esq. |
| | For Respondent:<br><br>Megan K. DiSanto, Esq.<br>Kenneth B. Chiavarini, Esq.<br>Monsurat O. Ottun, Esq. |